UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank GUGLIELMINI,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert HERKO, Defendant-Appellant.

Nos. 77–3758, 77–3759.

United States Court of Appeals,
Ninth Circuit.

Feb. 5, 1979.

As Amended on Denial of Rehearing and Rehearing En Banc June 21, 1979.

Anne Flower Cumings (argued), Cumings, Jordan & Morgan, Berkeley, Cal., for Herko.

Floy E. Dawson, Eb F. Luckel, Asst. U. S. Atty., San Francisco, Cal., for the United States.

Paul M. Goorjian, Goorjian & McCabe, San Francisco, Cal., for Guglielmini.

Before KILKENNY, TRASK and SNEED, Circuit Judges.

TRASK, Circuit Judge:

This appeal arises out of a conviction for violation on one count of Title 18 U.S.C. § 2314, interstate transportation of stolen property of a value in excess of $5,000. The indictment was returned in January 1977, in the Northern District of California. It charged Robert Herko, Sidney Fried, Frank Guglielmini,[1] and Joseph DiRodio with having transported three debentures, worth approximately $104,000 each, from New York City to San Francisco, California on January 10, 1977, knowing the same to have been stolen. After certain motions to suppress evidence were denied, the cases of Fried and DiRodio were severed from those of Herko and Guglielmini. Following jury trial beginning April 25, 1977, Fried and DiRodio were found guilty. DiRodio's conviction has been reversed and his case remanded by this court, *United States v. DiRodio*, 565 F.2d 573 (9th Cir. 1977). The appeal of Fried was affirmed, *United States v. Fried*, 576 F.2d 787 (9th Cir. 1978). After mistrial in the cases of Herko and Guglielmini, a second trial was commenced on September 12, 1977. A motion for acquittal was denied and the jury returned verdicts of guilty as to both defendants. They appeal.

One of the principal objections made during this trial was the district court's instruction to the jury on the basis of the *Allen* charge. In *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), the Supreme Court upheld the instructions given by the trial judge during defendant Allen's trial. The pertinent instructions were given to encourage the jury to reach a verdict. The Court said:

"The seventeenth and eighteenth assignments were taken to instructions given to the jury after the main charge was delivered, and when the jury had re-

turned to the court, apparently for further instructions. These instructions were quite lengthy and were, in substance, that in a large proportion of cases absolute certainty could not be expected; that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority." 164 U.S. at 501, 17 S.Ct. at 157.

In the present case the language of the charge was as follows:

"Now, it's your duty as jurors to consult with each other and to deliberate with a view toward reaching an agreement in the case if you consciously can do so. Each of you must decide the case for himself or herself. But you should do that only after giving full consideration to the evidence in the case and the views of your fellow jurors. Don't hesitate to reexamine your own views and change your opinions if you are convinced that the view is erroneous. Obviously, you should never surrender an honest convic-

1. We note the spelling of the name of Frank Guglielmini in various ways in different cases and in different papers in the same case. In the court reporter's transcript here it is sometimes spelled Gugielmini (sentencing proceedings) and at other times Gugliemini (trial transcript). In the companion case of *United States v. Fried*, 576 F.2d 787 (9th Cir. 1978), it is spelled Guglielmini. In *United States v. Di-*

*Rodio*, 565 F.2d 573 (9th Cir. 1977), his name is not mentioned in the text but is spelled Gugliemini in the caption at p. 573. In the case before us, No. 77–3758, it is spelled Guglielmini. We assume it is the same person throughout and adopt the spelling on the briefs filed for him assuming his attorneys know how to spell his name correctly in representing him.

tion as to the weight and effect of the evidence simply to arrive at a verdict, but it is important that from time to time you reconsider your views in the light of the views of your fellow jurors.

"This is a case that's taken some time and effort for counsel and the witnesses and the Court and indeed for you as jurors. There is no reason to believe that the case could ever be better or different than presented and certainly no reason to believe that there is any jury better qualified than this jury to decide the case. So, it is your responsibility if you consciously can do so to arrive at a verdict.

"When I suggest to you that you periodically consider your views, I am doing that in anticipation that it may happen that you reach what appears to be an impass, or it looks as though there may be difficulty in arriving at the verdict, I don't know whether that would be the case here, but if it is, I have some suggestions for you. If you reach a point where some substantial number of you, even though it may not be a majority, have doubts about the proof of the charges, I would think that the balance of the jury would say well, how can it be that I can be so positive about this case, feel that there is no reasonable doubt, when so substantial a number of my fellow jurors equally well intentioned do see a doubt, and at a point like that, consider whether the position that you hold is a real one and whether or not you might not reconsider the propriety of your view.

"Conversely, if only one or two of you feel that there is some doubt about the case, and the vastly larger number of your fellow jurors think that there is no doubt, I would think it appropriate again to reappraise your views. If you see doubts that some view of your fellows can [sic] see, consider whether those doubts are in fact reasonable doubts or whether they are merely imaginative or speculative doubts. But again, as I say,

it is your own conscientious determination that is required to be applied to the verdict in the case. But, it is important if you consciously can do so that you do return a verdict." Brief for Appellant at 9.

The greatest impact in the two situations came from the timing of the instruction. In the Supreme Court, the charge was a supplemental one after the jury had returned to the court for further instructions. In this case, the *Allen* charge was a part of the original instruction. As such, the effect of a direct admonition or command as to a particular portion of the instruction was avoided.

■ The legal question is whether under the circumstances before us the *Allen* charge is impermissibly coercive. We believe it is not. Much, if not all, of the coercive effect is diminished or eliminated by the absence of a situation which points a finger at one critical portion of the whole body of the charge apart from the remainder. It is not enough in this situation to rely on the rule that the instructions must be interpreted as a whole. The *Allen* charge is addressed to the jury as a mandatory admonition and goes to the heart of their responsibility in a particular case.

We have considered the *Allen* charge a number of times [2] and in most situations have allowed its use. But the views of the court have not been unanimous. In *United States v. Contreras,* 463 F.2d 773 (9th Cir. 1972), we found the giving of the *Allen* charge to be premature. The jury was not given the *Allen* charge as part of the original instruction, but had a limited form of the charge read to them after they requested a clarification on some points of law. We found the giving of the *Allen* charge to be improper because there was no indication that the jury had been deadlocked when the charge was given. *United States v. Seawell,* 550 F.2d 1159 (9th Cir. 1977) imposed another limitation on the use of

2. *See, e. g., United States v. Weiner,* 578 F.2d 757, 764 (9th Cir. 1978); *United States v. Seawell,* 550 F.2d 1159, 1162 (9th Cir. 1977); *United States v. Peterson,* 549 F.2d 654, 659 (9th Cir. 1977); *United States v. See,* 505 F.2d 845, 854 (9th Cir. 1974); *United States v. Contreras,* 463 F.2d 773, 774 (9th Cir. 1972); *Sullivan v. United States,* 414 F.2d 714, 716 (9th Cir. 1969).

the instruction. In *Seawell,* a modified *Allen* charge was given and a stalemate still continued. The court thereupon reread the *Allen* charge and a verdict was reached within the hour. The judgment on that verdict was reversed and remanded for a new trial by a divided court which said:

"A single *Allen* charge, without more, stands at the brink of impermissible coercion. We believe that the protection of a defendant's right to an impartial jury compels a per se rule. Such a rule is not at odds with prior decisions of this court or other courts of appeals. We conclude that as a sound rule of practice it is reversible error to repeat an *Allen* charge in a federal prosecution in this circuit after a jury has reported itself deadlocked and has not itself requested a repetition of the instruction." 550 F.2d at 1163 (Footnotes omitted).

On remand and retrial there was a second conviction and a second appeal to a different panel of the court. *United States v. Seawell,* 583 F.2d 416 (9th Cir. 1978). This court, again divided, pointed out that the "[a]ppellant now seeks a ruling that the giving of the *Allen* instruction even once, as in this retrial, is error per se." The court declined to do so and held that the *Allen* charge is proper absent unusual circumstances of coercion. The concurring judge who wrote a brief opinion pointed out the many jurisdictions which had disapproved the *Allen* charge, *see* 583 F.2d at 418 nn. 2 and 3, and that his concurrence was one not of approval but one that was compelled by the rule of court that a second panel may not overrule the decision of a prior panel without en banc consideration or absent unusual circumstances.

The decisions of other courts have also not been unanimous. The Supreme Court in *Johnson v. Louisiana,* 406 U.S. 356, 362, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), cited *Allen* in its original form with approval. The decision in *Allen* has been followed in a number of jurisdictions and the charge ultimately upheld when it was given, as here, as part of the original instruction. In *United States v. Skillman,* 442 F.2d 542 (8th Cir.

1971), referring to other circuits which have rejected the *Allen* charge, the court pointed to the Third Circuit where in *United States v. Fioravanti,* 412 F.2d 407, 420, *cert. denied,* 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969), that court announced it would no longer accept the *Allen* charge. The *Skillman* court however, declined to do so. The court said:

"This court in *Hodges v. United States,* 408 F.2d 543 (8th Cir. 1969), considered the question of whether the *Allen* charge was still valid. In answering that question in the affirmative Judge (now Mr. Justice) Blackmun, stated:

'We initially reject the claim that the *Allen* charge itself must be held today, some 70 years after the decision to be coercive, prejudicial, and unconstitutional. The Supreme Court has not yet seen fit to disavow it and, so long as it stands approved in decided Supreme Court cases, we are not to resolve that issue contrarily.'

. . . . .

"In *Hodges,* the court was confronted with a supplemental charge to the jury. In the instant case, the language complained of was given in the court's main charge. The American Bar Association has approved such a procedure:

'For the reasons set forth in the commentary to section 5.4(b), *infra,* the Advisory Committee has concluded that the instruction commonly referred to as the *Allen* charge or "dynamite charge" should not be given to a jury which has been unable to agree after some deliberations. Nonetheless, it is most appropriate for the court to instruct the jury initially as to the nature of its duties in the course of deliberations and section 5.4(a) so provides. The standard does not require the use of any particular language, but does identify the five points on which the jury might properly be advised.' "

*United States v. Skillman,* 442 F.2d 542 (1971), at 558–59.

In *United States v. Wynn,* 415 F.2d 135 (10th Cir. 1969), the defendant appealed

from a guilty verdict against him. He urged error and prejudice in a supplemental *Allen* instruction given by the trial judge after the jurors had reported they were unable to agree. On appeal the judgment was affirmed. Chief Judge Murrah, writing for the court, approved the supplemental instruction but stated that the court had repeatedly said that the substance of this charge should be included in the original instructions. *Id.* at 137. He cited the American Bar Association's Standards on Criminal Justice Relating to Jury Deliberations and particularly noted sections 5.4(a) and (b) and the five criteria to be given before the jury retires which are substantially like the *Allen criteria*.[3]

We find no reason to recommend the use of our supervisory powers to the entire court to the end that by its action the *Allen* charge will be discontinued in all future cases, or that a *per se* rule be adopted in all cases, or even in those cases where the instruction is not made a part of the general charge. We recognize, however, that the concern of this court and its divided views make further consideration inevitable. However, we note that it is only the charge which is argued to be impermissibly coercive that creates any problem and that did not occur here.[4] For this reason, the *Allen* instruction was properly given in this instance.

Appellants also contend that the trial court erred in denying the appellants' motion to suppress the evidence obtained by appellees' search of Room 332 of the San Francisco Holiday Inn. That contention was also made in *United States v. Fried,* 576 F.2d 787 (9th Cir. 1978) and rejected. We also reject it here. The affidavit upon which the search warrant was issued was clearly sufficient under *Fried* and we likewise find it sufficient here and for the same reasons.

■ The court did not err in admitting into evidence post-arrest statements of both appellants. Herko stated that the Weyerhauser debentures were not in the room where they were later found. Guglielmini's statement consisted of a denial that he knew certain persons involved in the transactions with the debentures. Neither statement was hearsay as contended and as defined in Rule 801(c) of the Federal Rules of Evidence because it was not offered to prove the truth of the matter asserted.

■ Finally, Guglielmini urges error below because the evidence was insufficient to support a conviction. On appeal, this court is obliged to view the evidence and all reasonable inferences arising therefrom in the light most favorable to the prevailing party. *United States v. Hood,* 493 F.2d 677, 680

3. "Length of deliberations; deadlocked jury.

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto;

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals."
American Bar Association Standards on Criminal Justice Relating to Trial by Jury, Part V, Jury Deliberations and Verdict, and particularly § 5.4(a) and (b). (Approved Draft 1968).

4. *United States v. Contreras,* 463 F.2d 773 (9th Cir. 1972), is distinguishable. In *Contreras,* the *Allen* instruction was given after the jury had returned to the court for further instructions. In the instant case, the coercive effect, if any, of the instruction is eliminated by giving the instruction as part of the original instruction to the jury.

(9th Cir. 1974). In light of such a standard, we find that the evidence was sufficient and the trial court was justified in finding the same.

Judgment AFFIRMED.