**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Jay BEATTIE,**
**Defendant-Appellant.**

No. 78–2381.

United States Court of Appeals,
Ninth Circuit.

Feb. 4, 1980.

---

The jury began deliberating at 3:40 p. m. on May 30, 1978, following four days of prosecution and defense presentations, including the testimony of more than 20 witnesses and the introduction of numerous exhibits. After deliberating for one hour the jury recessed for the night. Deliberations continued throughout the day on May 31, with the jury returning to the court once to be reinstructed on the elements of mail fraud, and once to hear the testimony of a prosecution witness read from the record. The following morning, after two hours of deliberation, the jury submitted four questions to the district judge concerning substantive elements of the offense charged and proper procedures for reaching a verdict. After responding to these questions, the district judge asked the jury if they were in agreement on any count of the indictment. When the foreman indicated that they were not, the judge made the following statement to the jury:

Alexander Anolik, San Francisco, Cal., for defendant-appellant.

Jo-Lynne Q. Lee, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Just a word or two about approaching your task.

It frequently develops that a jury may be evenly divided where half of you think there's reasonable doubt, the other half see no reasonable doubt. I'd suggest in a case like that, if half or almost half of you have doubts about the proof, that those who have no doubts would wonder if they were right to be as certain as they are when a substantial number of other jurors seem to find doubts about the sufficiency of the evidence.

Conversely, it would seem to me that if only one or two had doubts, that they should reappraise those doubts and consider the views of the fellow jurors and decide whether those doubts are reasonable when so many of their fellow jurors don't see them as reasonable doubt.

This is simply a method of re-examining your views about the case and it is without any intention of the Court to suggest that anyone should give up an honestly held conviction about the weight

Before BROWNING and WALLACE, Circuit Judges, and CURTIS,* District Judge.

WALLACE, Circuit Judge:

A jury found Beattie guilty on five counts of mail fraud, 18 U.S.C. § 1341, and one count of conspiracy to commit mail fraud, 18 U.S.C. § 371. Beattie appeals his conviction claiming that the trial judge erred when he instructed the jury, *sua sponte*, in a manner similar to that approved in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). That instruction, Beattie claims, coercively produced the guilty verdict and deprived him of a fair trial. We reject his claim and affirm the conviction.

---

* Honorable Jesse W. Curtis, United States District Judge, Central District of California, sitting by designation.

and sufficiency of the evidence. But you will recall I did tell you that it would be desirable, from time to time, to reappraise your views, to consider the impact on your views and the views of your fellow jurors and to change your views from time to time if you thought it appropriate to do so.

But always remember that it is your conscientious view about the evidence that must control and you don't give up a conscientiously held view solely for purposes of arriving at a verdict, although, as I say, it is highly desirable that there be a verdict on all or substantially all of the counts or at very least on some of the counts.

Any other questions that you wanted to raise now? All right. You will resume your deliberations. We will be at your call.

Five hours later, following a one and one-half hour lunch break and three and one-half hours of deliberation, the jury returned a guilty verdict.

The primary reason for judicial disfavor of an *Allen* charge such as that delivered in this case is its potentially coercive effect upon those members of a jury holding to a minority position at the time of the instruction. *United States v. Fioravanti*, 412 F.2d 407, 416–17 (3d Cir.), *cert. denied*, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969); Note, Due Process, Judicial Economy and the Hung Jury: A Reexamination of the *Allen* Charge 53 Va.L.Rev. 123, 126 (1967). It is contended that the *Allen* charge persuades minority jury members to alter their individually held views not on the basis of evidence and law, but on the basis of majority opinion.

■ We have in countless cases approved an *Allen* charge, *e. g.,* *United States v. Guglielmini*, 598 F.2d 1149 (9th Cir. 1979); *United States v. Handy*, 454 F.2d 885 (9th Cir. 1971), *cert. denied*, 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972); *United States v. Moore*, 429 F.2d 1305 (9th Cir. 1970); *Sullivan v. United States*, 414 F.2d 714 (9th Cir. 1969); *Dearinger v. United States*, 378 F.2d 346 (9th Cir.), *cert. denied,*

389 U.S. 885, 88 S.Ct. 156, 19 L.Ed.2d 183 (1967), and thus do not join other circuits which have held such an instruction to be error per se. See cases cited, *United States v. Contreras*, 463 F.2d 773, 774 n. 2 (9th Cir. 1972). Rather, our approach has been to determine if the instruction, when challenged, improperly affected the jury verdict. Thus, to determine the propriety of the trial court's use of an *Allen* charge in this case, we must examine the instruction "in its context and under all the circumstances" to see if it had a coercive effect upon the jury. *Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965); *United States v. Seawell*, 583 F.2d 416, 418 (9th Cir.), *cert. denied*, 439 U.S. 991, 99 S.Ct. 591, 58 L.Ed.2d 666 (1978); *Marsh v. Cupp*, 536 F.2d 1287, 1290 (9th Cir.), *cert. denied*, 429 U.S. 981, 97 S.Ct. 494, 50 L.Ed.2d 590 (1976).

Beattie contends that our decision is controlled by *United States v. Contreras, supra*, 463 F.2d 773. There, the trial court gave the jury an *Allen* charge after eight hours of deliberation and prior to any specific indication in the record that they were unable to reach a verdict. We held that the charge was premature and coercive. *Id.* at 774. Here, the jury had also deliberated for eight hours before receiving the charge and had not stated to the trial judge that they were deadlocked. The similarity of these facts to those of *Contreras* would suggest that here, as there, an *Allen* charge was premature. We have observed, however, that jury difficulty in reaching a verdict, sufficient to warrant an *Allen* charge, may be shown other than by specific statements from the jury. For example, a jury deliberating eight hours on a very simple factual issue may in itself show such difficulty. *See Sullivan v. United States, supra*, 414 F.2d at 716 (*Allen* instruction "should be given only when it is apparent *to the district judge* from the jury's conduct or *the length of its deliberations* that it is clearly warranted") (emphasis added).

■ Thus, while the *Contreras* decision does not focus on the factors that led it to the determination that an *Allen* charge was

premature there, we could conclude that the district judge here did not err in apparently concluding that the jury was sufficiently "deadlocked," based on the time of deliberation and the fact that they had returned to the court three times for further instructions and rehearing of testimony. We need not, however, reach that question because even if it were premature, we would not reverse unless the charge was also coercive. *United States v. Scruggs*, 583 F.2d 238, 241 (5th Cir. 1978); *United States v. Smith*, 521 F.2d 374, 376–77 (10th Cir. 1975); *United States v. Martinez*, 446 F.2d 118, 119–20 (2d Cir.), *cert. denied*, 404 U.S. 994, 92 S.Ct. 297, 30 L.Ed. 259 (1971). Indeed, in *Contreras* we stated both that the *Allen* charge given there was premature, and that we had "a profound feeling that it was coercive upon the jury." *United States v. Contreras, supra*, 463 F.2d at 774. This suggests that we did examine the charge "in its context and under all the circumstances" as required by *Jenkins v. United States, supra*, 380 U.S. at 446, 85 S.Ct. at 1060, although we did not directly say so. The brief per curiam opinion in *Contreras* does not reflect the factual basis of the "profound feeling that it was coercive upon the jury." The *Allen* instruction given in *Contreras* and the one given here are different, but we do not find that difference dispositive. We conclude that *Contreras* does not require reversal because, for the reasons set forth below, we hold that under all the circumstances the *Allen* charge given in this case, even if premature, was not coercive.

First, the charge given by the trial judge in this case contained all of the elements of the charge initially sanctioned by the Supreme Court in *Allen*.[1] Instructions admonishing jurors to reconsider their posi-

tions have "been consistently approved in the Ninth Circuit when [they are] in a form not more coercive than that in *Allen*." *United States v. Handy, supra*, 454 F.2d at 889. *E. g., United States v. Moore, supra*, 429 F.2d at 1306–07; *Sullivan v. United States, supra*, 414 F.2d at 717; *Dearinger v. United States, supra*, 378 F.2d at 348. We conclude that the instruction given here

> sufficiently reminded each of the jurors of his obligation to give ultimate controlling weight to his own conscientiously held opinion. There was nothing express or implied in that instruction which was more coercive in tendency than the language in the instruction approved by the Supreme Court in *Allen*.

*Sullivan v. United States, supra*, 414 F.2d at 718–19.

Second, the period of deliberation following the *Allen* charge was sufficiently long to permit jury members to reach a reasoned decision, based upon their individual perception of the evidence and the law. Here, no suspicion of coercion was raised by an immediate post-charge guilty verdict. We have considered the length of deliberation following an *Allen* charge as a significant factor in detecting coercion, *United States v. Moore, supra*, 429 F.2d at 1307, as have other circuits, *e. g., United States v. Robinson*, 560 F.2d 507, 517–18 (2d Cir. 1977) (en banc), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978); *United States v. DeStefano*, 476 F.2d 324, 337 (7th Cir. 1973); *United States v. Pope*, 415 F.2d 685, 690–91 (8th Cir. 1969), *cert. denied*, 397 U.S. 950, 90 S.Ct. 973, 25 L.Ed.2d 132 (1970). While the time elapsed between charge and verdict is significant, it is not dispositive of the issue. It is but one of the total circum-

1. The Supreme Court approved instructions stating

> that in a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to

> each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.

*Allen v. United States, supra*, 164 U.S. at 501, 17 S.Ct. at 157.

stances to be considered. The jury in this case, however, deliberated for three and one-half hours after the *Allen* charge before reaching a guilty verdict. By contrast, the jury in *Contreras*, where coercion was found, took only 35 minutes to find the defendant guilty after receiving its *Allen* charge.

Third, we cannot say that the total time of jury deliberation, approximately twelve hours, was so disproportionate to the task before the jury as to raise an inference that the *Allen* charge coercively produced the result. The time needed to reach a verdict is "best left to a trial judge," *United States v. Goldstein*, 479 F.2d 1061, 1069 (2d Cir.), *cert. denied*, 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973), and he apparently found it to be adequate.

Finally, neither Beattie nor the record reveals any indicia of coerciveness or pressure upon the jury. The instruction was not rendered in an atmosphere of judge and jury frustration over the jury's inability to break a deadlock among its members, nor was the judge aware of how the jury stood so as to suggest to the minority position jurors that he was speaking directly to them.

Thus, an examination of the instruction under all the circumstances reveals no coercion. Any prematurity of the instruction, therefore, could not be sufficient to warrant reversal. It is the rule of this circuit that the necessity, extent, and character of supplemental jury instructions is left to the sound discretion of the trial judge. *United States v. Miller,* 546 F.2d 320, 324 (9th Cir. 1976); *Wilson v. United States*, 422 F.2d 1303, 1304 (9th Cir. 1970) (per curiam). That discretion was not abused.

AFFIRMED.

BROWNING, Circuit Judge, concurring:

The court adequately distinguishes our decision in *United States v. Contreras*, 463 F.2d 773 (1972), and I therefore concur.

However, to my mind, the instruction in this case approaches the limits of acceptability under the law of this circuit. A barely acceptable instruction, once sanctioned, tends to become the new norm. By this process an instruction of dubious merit continues to deteriorate.

The paramount problem is the threat of coercion—a threat present even where, as here, the charge is found uncoercive "in its context and under all the circumstances" under *Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965). The line between admonishing the jury "simply . . . to keep trying," *Walsh v. United States*, 371 F.2d 135, 136 (9th Cir. 1967), and encouraging jurors to surrender their beliefs is extremely fine. If the charge is truly effective, it must follow that it is also truly dangerous. As Judge Goldberg has said, "The charge is used precisely because it works, because it can blast a verdict out of a jury otherwise unable to agree that a person is guilty," *United States v. Bailey*, 468 F.2d 652, 666 (5th Cir. 1972).

The *Allen* instruction has been disapproved by three circuits. *See United States v. Silvern*, 484 F.2d 879 (7th Cir. 1973) (en banc); *United States v. Thomas*, 146 U.S. App.D.C. 101, 449 F.2d 1177 (D.C.Cir.1971); *United States v. Fioravanti*, 412 F.2d 407 (3rd Cir. 1969). Many State courts, too, have abolished it or restricted its use. *See, e. g., People v. Gainer*, 19 Cal.3d 835, 139 Cal.Rptr. 861, 566 P.2d 997 (1977), and cases cited at n. 8. For a recent resurvey of the objections to the charge, see Marcus, *The Allen Instruction in Criminal Cases: Is the Dynamite Charge About to be Permanently Defused?*, 43 Mo.L.Rev. 613 (1978).

If the charge is to be given, care should be taken that it be stated in the least objectionable form. The American Bar Association has suggested a form, to be given before the jury retires and repeated later if necessary, preferable to that used in this case:

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual

judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

American Bar Association Project on Minimum Standards for Criminal Justice, *Standards Relating to Trial by Jury*, Commentary to § 5.4 (1968). This form has been adopted in two Circuits,[1] approved in substantially the same form in four others,[2] and in my opinion would well be employed in the Ninth.

1. *United States v. Silvern*, 484 F.2d 879, 883 (7th Cir. 1973) (en banc); *United States v. Thomas*, 449 F.2d 1177 (D.C.Cir.1971).

2. *United States v. Angiulo*, 485 F.2d 37 (1st Cir. 1973); *United States v. Skillman*, 442 F.2d 542 (8th Cir. 1971); *United States v. Fioravanti*, 412 F.2d 407 (3d Cir. 1969); *Webb v. United States*, 398 F.2d 727 (5th Cir. 1968).