**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Alton Wayne MOORE,**
**Defendant-Appellant.**

**No. 80–1105.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1981.

Decided Aug. 10, 1981.

Rehearing and Rehearing En Banc
Denied Oct. 13, 1981.

Terry Amdur, Pasadena, Cal., for defendant-appellant.

Donald Etra, Asst. U. S. Atty., Los Angeles, Cal., argued, for plaintiff-appellee; Andrea Sheridan Ordin, U. S. Atty., Los Angeles, Cal., on brief.

Before GOODWIN and SNEED, Circuit Judges, and SOLOMON *, District Judge.

SNEED, Circuit Judge:

Appellant was convicted on three counts of soliciting money in exchange for his promise not to testify at the trial of another in violation of 18 U.S.C. § 201(e). With respect to two counts appellant was sentenced to six years in prison each, to run concurrently, and with respect to the third count appellant received a sentence of five years of probation to be served consecutive to the prison sentences. It is from these convictions that this appeal is taken. We affirm.

* Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

## I.

### THE FACTUAL AND PROCEDURAL BACKGROUND

While it may be true that to describe the facts of this case as "bizarre" is too extravagant, it is also true that to describe them as "unusual" is to employ an inappropriate understatement. Something between "odd" and "sensational" is perhaps about right. Our recital begins by noting that appellant in 1978 was serving a life sentence in prison in Belize (formerly British Honduras), Central America, for murder. In that year appellant met Harvey Dail, a fellow prisoner, who offered to help appellant escape from prison, to pay the expenses of his return to the United States and $20,000 in exchange for appellant's murder of Charles Hudson, a witness against one of Dail's business associates. Appellant accepted Dail's offer. Thereafter he did escape from the Belize prison and made his way to Guatemala City, Guatemala, where he presented himself to an agent of the Drug Enforcement Administration (DEA) of the United States and offered to become an informer against Dail, his former fellow prisoner and then present paymaster.

The DEA agreed to work with appellant and it was arranged that appellant would return to the United States and pretend to seek out and kill Hudson while gathering evidence against Dail. This arrangement was carried out to the point of recording numerous conversations with Dail, who also had returned to the United States, arranging for the surveillance of deliveries of weapons by Dail to appellant, and faking the murder of Hudson sufficiently convincingly to induce Dail to pay therefor and to seek to have appellant murder other troublesome individuals.

Shortly thereafter appellant appeared before a federal grand jury and approximately one month later he was arrested on a warrant for his extradition to Belize. Appellant was held for forty-five days and was released because the requisite extradition papers had not arrived prior to the expiration of this period. A few days later the scheme of the DEA and the appellant to obtain evidence against Dail encountered serious trouble. An associate of Dail's telephoned Hudson who, although he was supposed to be dead, answered the telephone. To protect appellant, Dail was arrested the next day in Las Vegas and charged with conspiracy to commit murder and interstate transportation of guns to commit a felony.[1]

At this point appellant's attention became directed toward those who might have an interest in Dail's avoidance of successful prosecution. Appellant, with the help of his wife, commenced a series of telephone calls to Dail's wife and later to one of Dail's associates in which he offered not to testify in Dail's trial in exchange for a sum of cash. These calls were recorded by both parties thereto. The DEA learned of the calls and quite understandably became concerned that the appellant would destroy their case against Dail. Upon being asked by the DEA about these calls appellant produced tapes of the calls and asserted that they were an attempt to incriminate additional members of Dail's organization, particularly the man against whom Hudson had been a witness. The DEA was not convinced and told appellant not to make any more calls to Dail's wife. Appellant agreed in writing to make no more calls.

Shortly thereafter he made additional calls and the DEA moved. Appellant was arrested, charged with violating 18 U.S.C. § 201(e), and arraigned on February 20, 1979. In due course the government offered appellant a plea bargain. If he would plead guilty to one count of violating 18 U.S.C. § 201(e), the government would request that Belize withdraw its extradition request, would not initiate extradition proceedings upon appellant's release so long as he violated no state or federal law, would recommend a sentence of five years, and would not prosecute appellant's wife for her

---

1. Dail in due course entered a plea of guilty to one count of a two count indictment and was sentenced to a term of eight years.

participation in the telephone calls to Dail's wife and associate. To encourage his acceptance of the offer the government indicated that should he reject the offer the indictment would be dismissed and extradition proceedings would be instituted which, it believed, would be successful. Appellant did reject the offer and the government commenced extradition proceedings.

At this point the government's effort to impose the sanction of extradition against its untrustworthy double agent encountered an obstacle. In the extradition proceedings the district court refused to order appellant's extradition. Confronted with this roadblock the government again arrested the appellant and obtained a second indictment against him on three counts of violating 18 U.S.C. § 201(e) and against him and his wife for conspiracy to violate 18 U.S.C. § 201(e). Following the trial, which occurred approximately ten and one half months after his arraignment on February 20, 1979, the jury acquitted both appellant and his wife on the conspiracy count and found appellant guilty on the three counts of violating 18 U.S.C. § 201(e).

Appellant seeks to reverse his convictions on these grounds:

(1) The government's prosecution of him was vindictive.

(2) The delay in bringing him to trial violated his speedy trial rights.

(3) The admission of his conviction for murder in Belize was prejudicial and improper.

(4) The trial court's use of the *Allen* charge was improper.

(5) The consecutive sentences imposed with respect to Counts III and IV were improper because the calls covered by those counts were to the same person and part of a single transaction. We shall now address each of these grounds.

## II.

## VINDICTIVE PROSECUTION

■ The heart of appellant's vindictive prosecution claim is his assertion that he was prosecuted because he exercised successfully his constitutional right to resist extradition. This, he asserts, brings his situation clearly within the teaching of *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), and our decisions applying this teaching such as *United States v. Groves*, 571 F.2d 450 (9th Cir. 1978). In *Groves* we recognized that the "appearance of vindictiveness" was sufficient to bring *Blackledge's* teaching into play. The central issue presented by *Blackledge* was, in its own words, "whether the opportunities for vindictiveness in this situation are such as to impel the conclusion that due process of law requires a rule analogous to that of the *Pearce* case." 417 U.S. at 27, 94 S.Ct. at 2102. In *Pearce* the Supreme Court held that the punishment imposed upon one, whose retrial and conviction followed a successful pursuit of his statutory right of appeal of an earlier conviction, could not be greater than that which was imposed at the time of the first conviction, in the absence of certain specified findings on the record. As the appellant sees it, these cases preclude his prosecution for his violations of 18 U.S.C. § 201(e).

The government, on the other hand, contends that its prosecution of the appellant following the failure of its extradition efforts is simply the imposition of the remaining available alternative following the appellant's rejection of the plea offer. As put in the government's brief:

"This case can be summed up by stating that the government proposed a plea offer wherein the two matters pending against the Moores [the extradition and the § 201(e) charge] would be completely disposed of. The Moores rejected this offer, and the government proceeded with both actions." Appellee's brief, p. 12.

Cast in these terms the prosecution, which led to the convictions here being appealed, is not vindictive but rather is governed by *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), which sanctioned the carrying out by a prosecutor of "a threat made during plea negotiations to reindict the accused on more

serious charges if he does not plead guilty to the offense with which he was originally charged." 434 U.S. at 358, 98 S.Ct. at 665. Much the same reasoning was employed by the Supreme Court in *Corbitt v. New Jersey*, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978).

We would have no difficulty in accepting the government's analysis had the plea offer made to the appellant explicitly stated that, if the offer were rejected and extradition efforts failed, the appellant and his wife would be prosecuted in the manner that they were. In fact, no such explicit threat appears to have been made. The reason for its absence, however, is tolerably plain, *viz.*, the government did not expect its extradition efforts to fail.

To bring this case within the framework of *Bordenkircher* and *Corbitt* it is necessary to hold that the threat to prosecute the appellant and his wife in the manner employed by the government was reasonably implied under the circumstances surrounding the plea offer. This does not strike us as an unreasonable interpretation of the plea offer and we so hold. We cannot accept the proposition that the appellant reasonably could have believed that a failure of extradition effort under the terms of the plea offer would have freed him and his wife of all threat of prosecution for his efforts "to market" his testimony. Without regard to whether appellant and his counsel in fact thought through the government's plea offer sufficiently to appreciate explicitly the government's secondary threat, it is surely true that had they done so they could not have been in doubt about its existence.

Finally, even if the prosecution of appellant's wife could be argued to fall outside the limits of *Bordenkircher* and *Corbitt*, this provides no comfort to the appellant because he and his wife were acquitted of the charge of conspiracy. Any taint that might have been attached to this charge was completely expunged by the acquittal.

## III.

## SPEEDY TRIAL

Appellant contends that his Sixth Amendment rights, as expressed in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), were violated by reason of the ten and one half months delay between his February 20, 1979 arraignment pursuant to the first indictment and his trial on the charges set forth in the second indictment. We shall assume without deciding that the relevant period of delay is to be measured from the arraignment pursuant to the first indictment and is not to be reduced for any period of time between the dismissal of the first indictment and the arraignment pursuant to the second indictment. *See United States v. Henry*, 615 F.2d 1223, 1232–1234 & n.13 (9th Cir. 1980). Under the circumstances of this case appellant's contention, if accepted, would require that we hold that appellant had a right to be tried under the first indictment prior to any extradition efforts and that the failure of those efforts followed by a delay equal to that existing in this case precludes further prosecution. Although it is clear that the speedy trial rights of an accused situated as was the appellant here may be violated by excessive delay both before and after the extradition proceedings, this is not that type of case. The government moved with reasonable alacrity both before and after, as well as during, the extradition proceedings. Its decision to invoke extradition was to carry out its major threat that it had employed during plea negotiations. The use of its implied secondary threat should not be precluded merely because the government chose to treat it as it was intended, i.e., a threat to be invoked only when extradition failed.

The application of the criteria of *Barker v. Wingo, supra*, yields a result consistent with this conclusion. These criteria are: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. We acknowledge that the delay in this case is long enough to require scrutiny under *Barker v. Wingo, United States v. Simmons*, 536 F.2d 827, 829–31 (9th Cir. 1976), but it is not long enough to weigh heavily against the

government. *See United States v. Henry,* 615 F.2d 1223, 1233 (9th Cir. 1980); *United States v. Santos,* 588 F.2d 1300, 1302–03 (9th Cir.), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1994, 60 L.Ed.2d 374 (1979). The reason for the delay has been made clear. It is the consequence of a decision by the government to seek extradition. This was an understandable decision and was expected by the appellant. It gave the government no advantage in the trial pursuant to the second indictment. That the government could have avoided any possibility of a speedy trial issue by the expedience of extending the plea offer prior to any indictment and upon its rejection promptly commencing extradition proceedings provides no basis for refusing to consider appellant's speedy trial argument; however, the availability of that expedient does suggest that the appellant's argument is not substantial.

Weighing in appellant's favor is the fact that he did in a timely fashion assert his speedy trial rights. However, once again it must be observed that this assertion prior to the commencement of extradition proceedings, were it to be given compelling weight, would require prosecution pursuant to the first indictment to precede the initiation of extradition. Such a requirement undoubtedly would postpone extradition indefinitely when conviction results. Thus, from a tactical point of view appellant's assertion of his speedy trial rights must be viewed as an effort to forestall extradition. This does not enhance the weight of his speedy trial claim.

Turning to whether appellant was prejudiced by the delay our conclusion is that he was not. The only possible source of prejudice to which appellant can point is the fact that the associate of Dail to whom appellant spoke in his attempt "to market" his testimony was in prison in Canada and consequently unavailable at appellant's trial. Not only did appellant fail to depose this associate of Dail's despite ample opportunity to do so, but it is also unlikely that this individual would have provided exculpatory testimony.

■ Appellant's contention that the court should have dismissed the second indictment pursuant to Rule 48(b), Fed.R. Crim.Pro., need not detain us. A court's decision not to dismiss is reviewable only for an abuse of discretion. *Hodges v. United States,* 408 F.2d 543, 551 (8th Cir. 1969). We find no such abuse in this instance.

## IV.

## ADMISSION OF APPELLANT'S BELIZE CONVICTION

■ Appellant made a pretrial motion to suppress evidence of his conviction for murder in Belize, his initial sentence to be hanged, and the life sentence he was serving therefor at the time of his escape from prison in Belize. He argued that the conviction and its sentences had little relevance to either the charges against him or his impeachment should he choose to testify, and that such evidence was highly prejudicial. He invoked Rules 403 and 609, Fed.R. Evid. At the hearing on his motion, appellant withdrew his motion on the grounds that certain tape recordings that he wished to introduce in the course of his defense would inevitably disclose the nature of his conviction in Belize. Reporter's Transcript (R.T.) at 126. Immediately prior to that withdrawal the prosecuting attorney had indicated that he intended to use the conviction in his opening argument. R.T. at 125. Although appellant technically conditioned his withdrawal of the suppression motion on the admission of the defense tapes, he immediately thereafter acquiesced in the court's decision to admit the conviction and to defer decision on the admissibility of the tapes. R.T. at 126–27.

During the trial, no objection was made to the prosecutor's use of appellant's conviction in his opening statement. R.T. at 151. Objections were made occasionally during the course of the testimony, primarily to those uses of the conviction that were designed to depict appellant as a murderer of his former partner in crime. No objections were made to the prosecutor's closing argument. No motion for a mistrial prior to submission of the case to the jury was made, despite the fact that the tapes on

which the withdrawal of the objection was conditioned were not admitted. Nor did appellant move for a new trial following the verdict.

We hold that the foregoing conduct did not preserve appellant's objection to the admission of the Belize conviction for appeal. We hold appellant waived his objection by withdrawing his suppression motion and failing to again raise the issue through a motion for a mistrial when the tapes on which that withdrawal was conditioned were denied admittance. Our conclusion is strengthened when after a careful review of the record, we find that the appellant made no objection to a full exposure of his history, beginning with his agreement, while in prison in Belize, to cooperate with Dail and ending with the phone calls at issue in this case.

■ Appellant also claims that he was denied due process in the proceeding in which he was convicted in Belize. It follows, he asserts, that admission of his Belize conviction was a denial of his due process rights in the instant case. This point was not raised below. Errors may be raised for the first time on appeal only if they constitute plain error. *United States v. Sims*, 617 F.2d 1371, 1377 (9th Cir. 1980); *United States v. Lara-Hernandez*, 588 F.2d 272, 274 (9th Cir. 1978); *United States v. Rich*, 580 F.2d 929, 938 (9th Cir.), *cert. denied*, 439 U.S. 935, 99 S.Ct. 330, 58 L.Ed.2d 331 (1978); Fed.R.Crim.Pro. 30, 52(b). Such error does not exist here.

### V.

### THE ALLEN CHARGE

After the jury had deliberated for slightly over a day and a half and had on two occasions sent out notes indicating that they were deadlocked, the court gave the jury a modified *Allen* charge. Following two more hours of deliberation the jury arrived at a verdict of guilty on each of the three counts of violating 18 U.S.C. § 201(e). Appellant insists that the giving of the *Allen* charge was coercive and requires reversal of his convictions. We disagree.

■ In this circuit, we determine the propriety of the trial court's use of an *Allen*

charge by examining the instruction in the context and circumstances in which it was given to see if it had a coercive effect on the jury. *Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965); *United States v. Beattie*, 613 F.2d 762, 764 (9th Cir. 1980). In *United States v. Contreras*, 463 F.2d 773 (9th Cir. 1972), we disapproved the use of an *Allen* charge as premature and coercive where the jury had deliberated for eight hours, had given no indication that it was deadlocked, and reached a verdict within thirty-five minutes after the *Allen* charge was given. The Court in *United States v. Beattie, supra*, distinguished *Contreras* on the basis that, although the charge in *Beattie* occurred after a similar eight hour deliberation with no indication of deadlock, the three and one-half hours of deliberation following the charge was sufficient "to permit jury members to reach a reasoned decision, based upon their individual perception of the evidence and the law." 613 F.2d at 765. The *Beattie* Court further considered the total length of the jury deliberation relative to the difficulty of the task before them and the lack of any coercive atmosphere surrounding the giving of the charge. *Id.* at 766.

We find that the two hours of deliberation following the *Allen* charge in this case was sufficient for each juror to reach a reasoned decision based on his own perception of the evidence and the law. A review of the record reveals that neither the jury nor the judge had expressed a sense of frustration at the jury's failure to reach a verdict, nor was the judge aware of how the jury stood so as to give the minority jurors the impression that the charge was particularly directed at them. Further, unlike the jury in *Contreras*, this jury indicated that they were deadlocked. Under these circumstances, we cannot say that the trial judge abused his discretion by giving the *Allen* charge.

### VI.

### CONSECUTIVE SENTENCES

■ As mentioned above, appellant was sentenced to six years in prison on each of

the first two counts of violating 18 U.S.C. § 201(e)—the telephone call to Mrs. Dail and the first telephone call to Dail's associate—those sentences to run concurrently, and to five years of probation on the third count—the second telephone call to Dail's associate—that sentence to run consecutively to the prison terms. Appellant argues that the imposition of consecutive sentences for the two calls to Dail's associate was improper because those calls constituted at most a single continuing violation of section 201(e). While it is possible that the concurrent sentence doctrine would enable us to avoid appellant's argument,[2] we hold that because each call to Dail's associate requires proof distinct from the other that the two calls do not constitute a single continuing violation. Appellant's purpose in making the calls, it is true, was constant; but it does not follow that each attempt "to market" his testimony must be considered a single transaction. *See United States v. Barnes,* 431 F.2d 878 (9th Cir.), *cert. denied,* 400 U.S. 1024, 91 S.Ct. 582, 27 L.Ed.2d 637 (1970); *Wilburn v. United States,* 326 F.2d 903, 904 (5th Cir. 1964); *cf. Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (same transaction may be charged under two statutes if each offense requires proof of a fact that the other does not).

Affirmed.

---

**2.** Even were we to decide, as appellant argues, that the two telephone calls to Dail's associate constituted a single transaction for which only one sentence could be imposed, we could vacate appellant's concurrent sentence to six years in prison on the first call, leaving in effect the six year prison term for the call to Mrs. Dail and the five year consecutive probation term for the second call to Dail's associate. Because deciding the issue in that manner would not affect appellant's disposition, and because we see no adverse collateral legal consequences to appellant from a decision not to decide the issue, the concurrent sentence doctrine would allow us not to reach it. *See United States v. Ford,* 632 F.2d 1354, 1364–65 (9th Cir. 1980); *United States v. Walls,* 577 F.2d 690 (9th Cir. 1978). However, because this approach does involve an element of arbitrary choice with respect to which conviction should be vacated, we prefer to confront the appellant's contention directly.