UNITED STATES of America

v.

Jerry J. JAMES, Appellant.

UNITED STATES of America

v.

Thomas K. JAMES, Appellant.

Nos. 84–5287, 84–5299.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 20, 1984.

Decided June 18, 1985.

William J. Garber, Washington, D.C. (appointed by this Court), for appellants in Nos. 84–5287 and 84–5299. David Carey Woll, Rockville, Md., was on the brief, for appellant in No. 84–5287.

John M. Facciola, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGeno-va, U.S. Atty., Michael W. Farrell, Thomas J. Tourish, Jr. and William J. O'Malley, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee in Nos. 84–5287 and 84–5299.

Before WALD, EDWARDS and BORK, Circuit Judges.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

On March 26, 1984, a jury found appellant Thomas K. James not guilty of possession with intent to distribute cocaine, marijuana, and phencyclidine ("PCP"), 21 U.S.C. §§ 841(a), 841(b)(5) (1982), but convicted him of the lesser-included offenses of possession of each of those drugs. 21 U.S.C. § 844(a) (1982). He was sentenced to consecutive sentences of one year on each of the counts of possession. His brother, appellant Jerry James, pleaded guilty to possession of PCP and, in exchange for that plea, the other count pending against him, possession of marijuana, was dismissed. He was sentenced to one year, but the sentence was suspended and he was put on two years' probation.

Both appellants challenge the denial of their pre-trial motions to suppress.[1] They contend that the police did not adequately state their "purpose" in executing the search warrant as required by 18 U.S.C. § 3109 (1982). Thomas James also appeals the sufficiency of the evidence and the trial judge's use of a *Thomas* instruction which, he claims, coerced a jury verdict against him.

## I.

The police learned of a drug operation at the James residence, 2726 13th Street, N.W., through an informant who said he had purchased cocaine there. This informant had provided information to the police on at least thirty prior occasions, proving

---

1. Before pleading guilty to the PCP count, Jerry James reserved his right to appeal the trial judge's denial of his motion.

accurate in each instance. An undercover officer accompanied the informant to the James home. Pursuant to department practice, the officer searched the informant to make sure that he was not already in possession of contraband, and, finding that he was not, gave him marked money to make a drug purchase. The informant returned from the James residence with a plastic bag containing cocaine. Based upon this evidence and the informant's affidavit that cocaine had been sold there on a regular basis in the past, the police obtained a search warrant.

On September 9, 1983, at one o'clock in the afternoon, the police went to the James residence to execute the warrant. Sergeant Larry L. Brillhart, who led the team, testified that two uniformed officers approached the door to attempt to gain entrance by means of a ruse, while the rest of the officers waited fifty or so feet away out of sight. Transcript of Motion to Suppress ("M. Tr.") at 29–30, 34–37. No ruse was attempted, however, because the uniformed officers knocked several times but received no answer. Brillhart then approached the door, knocked loudly, and announced "police, narcotics." There was still no response. Brillhart repeated the loud knocking and announcement of "police" two or three additional times within approximately thirty seconds without obtaining any response. Id. at 37, 44–45. At this point, the officers heard someone inside the house running down the back stairs. Brillhart ordered officer Stumbo to break down the door. Id. at 29, 38.

After gaining entrance, the officers spread out to search different parts of the house. Officer Stumbo ran down a hallway to the rear of the house and down stairs into a dark basement. After a few moments searching in the dark, one of the two officers who had followed Stumbo to the basement found and switched on an overhead light. Trial Transcript ("Tr.") at 67–69. Stumbo saw a bookcase with a curtain hanging behind it and an arm reaching from behind the bookcase. Id. at 69. Stumbo drew his revolver and told the individual, later identified as Thomas James, to put his hands up. James, however, grabbed the revolver, pulled down on it and caused it to discharge. Id. The officers subdued him. James was dressed in his underwear. When asked to get dressed, he put on clothes taken from a rack of clothes on the other side of the room. After taking Thomas James to the first floor where other officers were assembling all the persons found in the house, the police began a search of the basement.

The main part of the basement consisted of two areas. One, used as a laundry, contained a washer, a dryer, and a sink. The other area held the bookcase and curtain, and behind the curtain, a bed that had been slept in recently. Beside the bed was a nightstand on which were a razor, a toothbrush, toothpaste, and an alarm clock. Tr. at 94, 117. Opposite the bed was the metal bar from which Thomas James had selected his clothing. Several items of men's clothing of similar size hung there. Id. at 138–39. A search revealed a plastic bag containing 10,780 milligrams of marijuana laced with PCP in one of the jackets, and in another seven tin foil packets containing a total of 2,420 milligrams of marijuana laced with PCP. Id. at 169–70, 288.

When the officers first entered the basement they heard water running. In the sink was found a jar with water from the spigot running into it. On the walls of the jar and around the base of the sink there remained flecks of a material that resembled marijuana. Tr. at 119, 125, 166. When tested the flecks proved to be marijuana laced with PCP. Id. at 53.

In several holes in the basement ceiling, running generally from the area of the sink to that of the bed, were found two bags of cocaine, several bags of marijuana, marijuana seeds, and marijuana laced with PCP. Tr. at 51–53, 171–76. Also in the ceiling holes were procaine and mannitol,[2] starch, syringes, a cut card used to mix cocaine,

---

2. Mannitol and procaine, which were both found in various spots in the basement, are substances used to dilute cocaine. They are not themselves illegal substances.

and a spoon with a white powder residue. *Id.* at 127–28, 174–75, 178–79.

Partially partitioned off from the rest of the basement, but without a door, was a small room in which the officers found a variety of drug processing and user materials including mannitol, measuring spoons, pipes used to "free base" cocaine,[3] glassine bags with a white powder residue, the tops of acetylene torches, pipes, measuring spoons, vials, a triple beam Ohaus scale used to measure weight to within a tenth of a gram, sheets of plastic, and a heat sealer to seal plastic bags. Tr. at 129–32, 178–79.

## II.

Appellants contend that because Sergeant Brillhart announced only "police" when knocking at the door and did not state in addition that the officers were there to execute a search warrant, the forced entry was gained in violation of the controlling statute and therefore all evidence gathered as a result of the search should be suppressed.

18 U.S.C. § 3109 (1982) provides that:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his *authority and purpose,* he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

(Emphasis added.) In the ordinary case an officer is required to state both his authority and his purpose. *Miller v. United States,* 357 U.S. 301, 308–09, 78 S.Ct. 1190, 1195, 2 L.Ed.2d 1332 (1958). In this case, however, the police, after knocking and announcing their authority repeatedly, but without eliciting a response, heard someone running down the back stairs. A reasonable interpretation of such sounds is that the inhabitants are well aware of the purpose of the police visit and are moving to destroy evidence. This is especially true where, as here, the police knew they had reliable information that cocaine was being sold at that location. Faced with the probable imminent destruction of evidence, the police acted properly by entering the premises at once. To require the police in these circumstances to announce that they are there to execute a search warrant would be to require a futile act. *See, e.g., United States v. White,* 514 F.2d 205, 207 (D.C.Cir. 1975); *United States v. Wylie,* 462 F.2d 1178, 1186–87 (D.C.Cir.1972). Compliance with section 3109 is unnecessary in such circumstances. *See, e.g., United States v. Smith,* 520 F.2d 74, 80–81 (D.C.Cir.1975); *Masiello v. United States,* 317 F.2d 121, 122–23 (D.C.Cir.1963); *see also Sabbath v. United States,* 391 U.S. 585, 591 & n. 8, 88 S.Ct. 1755, 1759 & n. 8, 20 L.Ed.2d 828 (1968) (recognizing that exceptions to section 3109 may apply in exigent circumstances); *Ker v. California,* 374 U.S. 23, 39–41, 83 S.Ct. 1623, 1632–1634, 10 L.Ed.2d 726 (1963) (recognizing an exception to a California announcement and entry statute).[4]

---

3. "Free basing" refers to the process of heating cocaine in order to remove the reagents used to dilute it so the cocaine can be used in its purest form.

4. Although it is not necessary for us to reach this point, given our findings above, it is arguable that the police did adequately announce their purpose. Sergeant Brillhart testified during cross-examination at the hearing on the motion to suppress that the first time he knocked on the door he announced "police, narcotics, we have a search warrant." M. Tr. at 37. Later in the cross-examination he stated that he had only used the words "police" and "narcotics."

Q. All right. Now, it is your testimony, then, Sergeant, that when you went to these premises, you knocked, and you announced "police," and did you indicate why you were there, other than just saying "police"?

A. Well, the first time I knocked and announced our presence, I used the word "narcotics." And there was no response.

Q. All right. So you never indicated that you had a search warrant for the premises?

A. No, not at that time.

*Id.* at 42–43.

Although we will assume that Brillhart did not actually state that he was there with a search warrant, the record indicates that he, at a minimum, announced "Police, narcotics." This is enough to satisfy the "authority and purpose" requirement of § 3109. By saying "narcotics," the police made known the purpose

### III.

■ Thomas James argues that the evidence was insufficient to establish narcotics possession beyond a reasonable doubt. In reviewing the sufficiency of the evidence, we cannot overturn the verdict unless a reasonable jury must necessarily have entertained a reasonable doubt. We must "view[ ] the evidence in the light most favorable to the Government, according the Government the benefit of all legitimate inferences, and recognizing that it is the jury's province to determine credibility and to weigh the evidence." *United States v. Singleton,* 702 F.2d 1159, 1163 (D.C.Cir. 1983), *citing Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *see also Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979) (same standard used in bench trial).

■ Appellant contends that because the government showed him only to be in "proximity" to the contraband he could not have been convicted as a possessor. Brief for Appellant Thomas James at 20–21. But proximity may, under certain circumstances, amount to constructive possession. As this court has stated,

> [p]ossession of a narcotic drug may be either actual or constructive.... Constructive possession may be shown through direct or circumstantial evidence of dominion and control over the contraband ..., and may be found to exist where the evidence supports a finding that the person charged with possession was knowingly in a position, or had the right to exercise "dominion or control" over the drug.

*United States v. Lawson,* 682 F.2d 1012, 1017 (D.C.Cir.1982). The evidence introduced by the government was clearly adequate to show that appellant was knowingly in a position to exercise dominion or control over the drugs. Thomas James was found in a basement that, the evidence

indicates, was an operating drug-processing factory. The spigot water running into a jar that still contained flecks of illegal narcotics indicated that the destruction of evidence of narcotics had just been attempted by somebody in the basement. There was nobody in the basement but the appellant. Moreover, Thomas James was not simply standing in the room or passing through. He was in his underwear, hiding behind a bookcase, and the evidence indicates he tried to disarm the arresting officer. These facts alone, which indicate consciousness of guilt, *see United States v. Staten,* 581 F.2d 878, 885–86 (D.C.Cir. 1978); *United States v. Morando-Alvarez,* 520 F.2d 882, 884–86 (9th Cir.1975), would seem to be amply sufficient to sustain the conviction for possessing drugs, but there were more.

Near James, who was in his underwear, was a bed that had recently been slept in. On the nightstand were articles showing that somebody regularly used the basement as a bedroom. Appellant dressed himself in clothing hanging in the room and the remaining clothing, according to a police witness, appeared also to be of the size that fit James. Two of the jackets contained large amounts of marijuana laced with PCP. The drugs and paraphernalia in the small room without a door were only a short distance from the bed and were within view. It would be entirely reasonable for the jury to conclude from this evidence that James often slept in the bedroom and, quite aside from the evidence of his consciousness of guilt, could not have been unaware of the narcotics and processing equipment around him.

The only contraband not in plain sight was that in the holes in the ceiling, though the holes themselves were clearly visible. Given the clear pattern revealed by the evidence, it was entirely reasonable for the jury to infer possession of that contraband as well. Appellant's apparent use of the

---

of their visit in a manner understandable to the inhabitants. The circumstances surrounding this entry—especially the movement in the house that was fairly interpretable as a possible

move to destroy evidence—indicate that the inhabitants were adequately apprised of the purpose of the officers' visit.

basement as a residence, the fact that the basement was an operating drug-processing factory, that he had tried to destroy evidence of narcotics possession, and that he had demonstrated consciousness of guilt so clearly tied him into the entire drug operation that it would be idle to speculate that he might not have known of a particular quantity of narcotics merely because it was not in plain view. Were we to rule otherwise, narcotics dealers and possessors could always avoid responsibility for illegal drugs hidden from sight on their premises. The cases in other circuits that have reversed convictions based on evidence hidden in walls, ceilings, or other places where other people had access to the premises were devoid of *any* evidence that pointed to possession by the defendant. *See, e.g., United States v. Bonham,* 477 F.2d 1137, 1139–40 (3d Cir.1973) ("nothing except the joint occupancy of the room upon which an inference of possession could be based," and the record, in addition, showed that contraband within sight belonged to the other inhabitant). That, as the evidence we have rehearsed demonstrates, is not at all like this case.

The jury's verdict was based on sufficient evidence of guilt and the denial of the motion for acquittal at the end of the government's case was proper.

## IV.

Thomas James' final contention is that the trial judge coerced the jury's verdict by giving a *Thomas* instruction prematurely and unnecessarily.

The jury began deliberating on Friday, March 23, 1984, at 2:55 p.m. Tr. at 341. Later that day, at 5:37 p.m., the jury was excused for the weekend. They resumed deliberation the following Monday morning at 10:24 a.m. *Id.* at 356. The jury requested further instructions from the court, which were given to them. *Id.* at 358. At 12:20 p.m. the jury informed the judge that they were unable to reach a verdict. *Id.* at 359. The judge then excused the jury for lunch and informed counsel that after lunch she intended to give the jury a modified *Allen* charge—a *Thomas* instruction. *Id.* After the jury returned from lunch at 1:53 p.m., the instruction was given as follows:

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges—judges of facts. Your sole interest is to ascertain the truth from the evidence in the case.

*Criminal Jury Instructions, District of Columbia,* No. 2.91 (3d ed. 1978). This instruction has been approved by this circuit *en banc. United States v. Thomas,* 449 F.2d 1177, 1184 n. 46 (1971). At 2:20 p.m. the jury returned its verdict finding Thomas not guilty of possession with intent to distribute cocaine, marijuana, and PCP, but guilty of the lesser-included offenses of possession of each of the three drugs.

 It is entirely in the discretion of the trial judge to give a *Thomas* instruction when the jury has reached an impasse and in her view the jury has had sufficient time to deliberate. *See United States v. Thomas,* 449 F.2d at 1187; *see also United States v. Moore,* 653 F.2d 384, 390 (9th Cir.), *cert. denied,* 454 U.S. 1102, 102 S.Ct. 680, 70 L.Ed.2d 646 (1981) (jurisdiction using more "coercive" *Allen* charge gives trial court complete discretion to issue the charge once jury has reached an impasse

after a reasonable amount of time). The jury had spent over five hours considering testimony about relatively simple factual disputes and reported an impasse. The instruction itself guards against a coerced jury verdict by cautioning that the jurors should reach a verdict only "if [they] can do so without violence to individual judgment," and jurors are not to surrender "[their] honest conviction[s] as to the weight or effect of evidence solely because of the opinion of [their] fellow jurors, or for the mere purpose of returning a verdict." *Criminal Jury Instructions, District of Columbia,* No. 2.91 (3d ed. 1978). We find no abuse of discretion in the judge's giving the *Thomas* instruction when she did.

The judgments of the district court as to both appellants are hereby

*Affirmed.*