**Kevin SMALLS, Petitioner,**

v.

**Wilfredo BATISTA, Superintendent, Marcy Correctional Facility, Respondent.**

**No. 97 CIV. 6045(RWS).**

United States District Court, S.D. New York.

May 19, 1998.

The Legal Aid Society, Criminal Appeals Bureau, New York, NY, by Jeffrey I. Richman, of Counsel, for Petitioner.

Robert T. Johnson, District Attorney, Bronx County, Bronx, NY, by Nancy D. Killian, Assistant District Attorney, of Counsel, for Respondent.

## OPINION

SWEET, District Judge.

Petitioner Kevin Smalls ("Smalls") has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that the trial court's supplemental *Allen v. U.S.*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) charge deprived him of his constitutional rights to due process of law and a jury verdict of guilt beyond a reasonable doubt. For the reasons set forth below, the petition is granted.

### Prior Proceedings

On December 2, 1987, Smalls was convicted, after a jury trial conducted in the Supreme Court of the State of New York, Bronx County, of Robbery in the Second Degree and was sentenced to an indeterminate term of imprisonment between two and six years.[1] He appealed to the New York State Supreme Court, Appellate Division,

First Department ("Appellate Division"), claiming, *inter alia*, that the supplemental *Allen* charge given by the trial court improperly placed a burden on the dissenting juror to convince the other eleven jurors, and therefore deprived Smalls of his rights under the United States Constitution to a fair trial and due process.

On March 4, 1997, the Appellate Division unanimously affirmed the conviction. *See People v. Smalls*, 237 A.D.2d 116, 654 N.Y.S.2d 362 (1st Dep't 1997). On May 19, 1997, the New York Court of Appeals denied Smalls leave to appeal. On August 14, 1997, Smalls filed with this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was deemed fully submitted on April 16, 1998.

### Facts

#### I. Facts of the Underlying Offense

The following facts were established at trial. On November 23, 1986, sometime between 12:00 and 1:00 a.m., Lang Faulcon ("Faulcon") was at the 149th Street subway station, waiting for an uptown train. He stood on the downtown side of the station since there was an off-hour waiting area on that side. At some point, a downtown train arrived, and Faulcon noticed a group of six men and two women exit the train. For the next fifteen minutes Faulcon was "watching everybody on the platform," especially the six men, one of which he said was Smalls, because they were looking at him.

When the uptown train arrived, Faulcon went through the tunnel to the uptown side and boarded the train. He noticed that the six men were behind him. As Faulcon got on the train, he realized that four of the six men, including Smalls, entered the same car as he did, while the other two boarded an adjacent car. Noticing that Smalls was staring at him, Faulcon watched as Smalls talked with his three companions, who were about eight to twelve feet from Faulcon. Growing

---

1. Smalls was released on parole on September 5, 1989, with parole to be scheduled to expire on March 24, 1993. Smalls's parole was revoked on March 8, 1991. He is presently incarcerated in the Mohawk Correctional Facility, Rome, New York, pursuant to a judgment rendered May 10, 1994, in the Supreme Court of the State of New York, New York County, convicting him, upon his plea of guilty, of Attempted Criminal Sale of a Controlled Substance. Smalls is still on parole in connection with the underlying charge herein.

afraid, Faulcon got off the train at the next stop after a two-minute ride. When he did so, one of the men, identified by Faulcon to be Smalls, called out to his counterparts, "Yo, yo, he's getting away." As Faulcon began to run, Smalls grabbed him in a choke hold and said, "We want your coat, take your coat off." A "big guy" started kicking Faulcon's hand, forcing him to release his jacket. The group of men took Faulcon's leather coat, gloves, glasses, and watch.

Later that morning, Faulcon went to a Transit Police station and reported his attack, describing a few of the assailants. Despite the dimly lit train, Faulcon had been able to see the faces of his assailants, including that of Smalls. The lights on the 149th Street subway platform, however, were bright. On December 1, 1986, Faulcon was shown a book of photographs and was told to take his time and pick out the robber. Faulcon was unable to identify "anybody" the first time he looked through the book. However, after examining the pictures for a second time, Faulcon selected Smalls' photo and identified him as one of the six men who robbed him. On February 14, 1987, Faulcon went to the 48th Precinct where he picked Smalls out of a lineup. Smalls was then arrested.

Aside from Faulcon, the only other prosecution witness called at trial was Transit Police Detective Charles Coleman, who testified that the off-hours waiting area at the 149th Street station was brightly lit. Detective Coleman never recovered Faulcon's stolen property from Smalls. Smalls presented no evidence at trial.

## II. *Deliberations and Verdict*

The trial court received a note (Court Exhibit 4) from the jury during the first evening of jury deliberations, signed at 8:25 p.m., which stated that "[t]he decision is 11 to 1, and we are unable to come to a conclusion." The court informed counsel that it intended to instruct the jurors to continue their deliberations, to state their opinions to each other, and to try to convince the other jurors of their views. Defense counsel objected to the proposed charge, stating that it was more prejudicial than an *Allen* charge and noting

that with the vote eleven to one the court was urging the eleven to try to convince the one. Despite the objection, the court instructed the jurors as follows:

> Now, you have had the case for some four or five hours, taking off your time for supper.
>
> I will ask you to go back and again discuss this amongst yourselves. You should not be afraid to express your opinions and views. If you believe your opinions and views are correct, then you should make every effort *to convince* the others whether it be one of eleven, two out of twelve, whatever number it may be, to express your views.
>
> If you believe your views are correct, then it is *your responsibility as a juror to convince* the others as to the correctness of the position of views that you have. You should continue to discuss the case.
>
> If, after discussing your views and opinions with your fellow jurors, if you then feel that your views are no longer correct, you should be willing to change them, but if you believe your views are correct, then it is *your responsibility as a juror to attempt to convince the others* of the correctness of your views.
>
> What I am asking you to do is to continue a free discussion. Discuss the issues, discuss the facts, and as you determine the facts to be, you should always be open to reason, you should not go to the juryroom and lock yourselves in the room and refuse to discuss the case.
>
> Listen to the views of your fellow jurors, and express your personal views as well. I am not concerned what your views are. If you believe they are correct, *it is your responsibility to convince the others*, have them switch, have them adopt your views, but discuss it.
>
> Please return to the juryroom.

(Trial Tr. at 259–61 (emphasis added).)

After further deliberations, the jury was unable to reach a unanimous verdict and was sequestered overnight. The next day, after readbacks of Faulcon's testimony, the jury returned a verdict convicting Smalls of robbery in the second degree.

*Discussion*

### I. Smalls Exhausted His State Court Remedies

 A state prisoner seeking federal habeas corpus review of his state court conviction must first exhaust his available state court remedies. *See* 28 U.S.C. § 2254(b)(1) and (c).[2] The exhaustion requirement, which is premised primarily on considerations of comity, is not satisfied unless the petitioner "fairly presents" his federal claim in the state courts, thus giving them a "fair opportunity" to hear the federal claims that form the basis of the habeas petition. *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir.1982) (en banc). Because nonconstitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims. *See Petrucelli v. Coombe*, 735 F.2d 684, 687 (2d Cir.1984).

 For the claim raised in the habeas petition to be deemed to have been "fairly presented" to the state courts, the petitioner must have informed the state courts of both the facts allegedly constituting the violation and "essentially the same legal doctrine he asserts in his federal petition." *Daye*, 696 F.2d at 191. Though the legal doctrine asserted in the state courts need not be identical to that raised in the habeas petition, the "nature of the presentation of the claim [must have been] likely to alert the court to the claim's federal nature." *Id.* at 192. The Second Circuit applies this standard liberally. A habeas petition need not cite " 'chapter and verse' " of the Constitution to the state courts to satisfy the exhaustion rule. *Levine v. Comm'r of Correctional Servs.*, 44 F.3d 121, 124 (2d Cir.1995) (*quoting Daye*, 696 F.2d at 194).

There is no dispute that Smalls raised the same facts in his state court actions as he now raises in his habeas petition. Therefore, the question is whether Smalls' legal arguments put the state courts "on notice" of the federal nature of his claim.

 A habeas petitioner can put the state courts on notice of the federal nature of his claim in a number of ways. "Obviously, if the petitioner has cited the state courts to the specific provision of the Constitution relied on in his habeas petition, he will have fairly presented his legal basis to the state courts." *Daye*, 696 F.2d at 192. Furthermore, the petitioner can accomplish this task by:

(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* at 194; *see also Petrucelli*, 735 F.2d at 687–88. The more specific the description of the federal right in question before the state courts, the more reasonable it is to conclude that the issue was "fairly presented." *Daye*, 696 F.2d at 193. As the *Daye* court wrote:

The greatest difficulty arises when in the state court the petitioner has described his claim in very broad terms, such as denial of a "fair trial." The concept of fairness embraces many concrete notions, ranging from such fundamental matters as the right of the defendant to know the charges against him, to such lesser interests as his right to have each count of the indictment charge him with no more than one criminal violation .... Obviously not every event in

---

**2.** Section 2254(b)(1) and (c) of 28 U.S.C. provides that: (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available. State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(C) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

To be fully exhausted, the claim must have also been presented to "the highest state court from which a decision can be had." *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 190 n. 3 (2d Cir.1982) (en banc).

a criminal proceeding that might be described as "unfair" would be a violation of the defendant's rights under the Constitution.

*Id.* (citations omitted).

The mere incantation of the words "fair trial" and "due process of law" before the state courts does not always alert them to the federal nature of the claim. *See Petrucelli,* 735 F.2d at 688 (habeas petitioner did not alert state courts to double jeopardy claim by contending that introduction of certain evidence "deprived him of fair trial [sic] and due process of law" (citations omitted)). Likewise, "one reference [to 'constitutional rights'] is insufficient to alert the state courts specifically to a confrontation clause issue." *Grady v. Le Fevre,* 846 F.2d 862, 864 (2d Cir.1988).

■ By contrast, in the Second Circuit, referring to the Federal constitutional provision allegedly violated does satisfy the *Daye* standard. In *Gonzalez v. Sullivan,* 934 F.2d 419 (2d Cir.1991), the Second Circuit affirmed the district court's holding that the petitioner had exhausted his state court remedies where his brief to the Appellate Division asserted that:

> The prosecutor's summation, which was overwhelmingly vengeful in tone, containing appeals to the community's sense of outrage at the crime, attacks on appellant's character and on defense counsel's role as an advocate, and other improprieties, deprived appellant of a fair trial. (U.S. Const., amend XIV; N.Y. Const., art. I, § 6).

*Id.* at 423. The court concluded, albeit reluctantly, that this reference to the Fourteenth Amendment complied with *Daye,* writing that:

> to allow a petitioner to exhaust his remedies merely by alluding to the federal constitution, without providing the state court at least a minimal argument on its application, undercuts this policy [of comity] .... [W]e think it would be better practice for counsel when relying on a broad constitutional doctrine like the Fourteenth Amendment to support the claim with a factual premise and by citation to federal cases.

Because we believe nonetheless that petitioner at least arguably complied with the exhaustion requirements set forth in *Daye,* we proceed to consider the merits ....

*Id.* at 423; *see also Harris v. Scully,* 779 F.2d 875, 878 (2d Cir.1985) (petitioner exhausted state court remedies where factual issues in state and federal court were the same, and petitioner "cited the fifth and fourteenth amendments, and alleged in at least two places in his brief that the trial court had committed constitutional error by refusing his requested instruction"); *Anderson v. Reynolds,* No. 91 Civ. 2603, 1992 WL 47979, at *5–*6 (S.D.N.Y. March 3, 1992) (exhaustion requirement satisfied where petitioner made reference to the Fourteenth Amendment twice in his Appellate Division brief); *Harper v. Kelly,* 704 F.Supp. 375, 377–78 (S.D.N.Y.1989) ("reference to a specific constitutional amendment [here, the Fourteenth Amendment] is sufficient to have put the State on notice of Harper's federal constitutional claim" (citing *Daye,* 696 F.2d at 192); *de la Cruz v. Kelly,* 648 F.Supp. 884, 886–88 (S.D.N.Y.1986)) ("[W]hile talismanic invocations of broad guarantees, such as those to "due process" or to a "fair trial," will not obviate the exhaustion requirement, references to the Fourteenth Amendment in the context of a specific description of the error alleged generally do fairly apprise the state court of the constitutional dimension of the alleged infirmity.").

■ As in *Gonzalez,* the first point heading in Smalls' Appellate Division brief states: "Appellant was denied his right to a fair trial and due process in this close, one-witness identification case, by the court's (a) *Allen* charge, which improperly placed a burden on the dissenting juror to convince the other eleven jurors .... U.S. Const., Amend. XIV; N.Y. Const., Art. I, § 6." (Smalls' Br. at 12.) After summarizing the factual basis for his argument, Smalls' brief states that "[t]hese errors denied appellant his right to a fair trial." (*Id.* at 13.) Moreover, in response, Respondent's Appellate Division brief addressed Smalls' constitutional arguments by asserting that "to the extent appellant now raises any constitutional claims, they are clearly unpreserved. ... Regardless, these claims are meritless." (Respon-

dent's Br. at 11.) Respondent then proceeded to discuss the merits.[3]

Smalls thus clearly referred to, and Respondent responded to, the federal constitutional issue that now forms the basis of this habeas petition. Smalls' argument was not formed as a state law matter but in terms of due process and the Constitution. Therefore, under the authorities cited above, Smalls exhausted his state court remedies.

Furthermore, even supposing that Smalls' claim did not, on its face, alert the state court to any federal claim, Smalls satisfies the last test of the *Daye* analysis. Smalls' contention regarding the *Allen* charge was sufficient to alert the state court that a federal due process claim was being asserted because the fact pattern alleged is within the mainstream of constitutional analysis. Smalls has a due process right to an uncoerced jury verdict. Although the so-called *Allen* charge does not always implicate a constitutional right, when the issue revolves around coercion it certainly does so. In *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), the Supreme Court, in addressing an *Allen* charge given by a Louisiana state court judge, stated:

> We hold that on these facts the combination of the polling of the jury and the supplemental instruction was not "coercive" in such a way as to deny petitioner any constitutional right. By so holding we do not mean to be understood as saying other combinations of supplemental charges and polling might not require a different conclusion. Any criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body.

*Id.* at 241, 108 S.Ct. 546. This principle is reflected in many cases, involving circumstances of improper jury instructions and charges and their effect on a criminal defendant's constitutional rights. *See e.g., Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994); *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Carella v.*

*California,* 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989); *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *see also California v. Roy,* 519 U.S. 2, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996) (describing harmless error standard under which habeas court was to review error in jury instruction).

That, with the exception of *Lowenfield,* the cases above did not deal with a coercive *Allen* charge is immaterial. As the Second Circuit explained in *Daye,*

> We regard it as immaterial that none of [the cases used to establish that Daye's contention of judicial partiality was within the mainstream of due process adjudication] dealt with a bias manifested through allegedly excessive and one-sided intervention at trial. The gravamen of a claim of denial of a fair trial due to judicial bias does not depend on the source of the bias or the manner of its manifestation. If judicial bias, or the appearance of it, existed, due process was denied. We do not believe it reasonable to assume that state judges presented with a claim of manifested judicial bias would fail to recognize the implication of due process rights simply because half a century of due process cases dealt with the mere risk of bias or with actual bias manifested in other ways.

*Daye,* 696 F.2d at 197.

Here, too, it is difficult to believe that a state court judge presented with allegations of a jury verdict reached in the wake of a coercive *Allen* charge would not recognize the due process implications.

## II. *Smalls' Due Process Claim Has Merit*

 Section 2254(d)(1) provides that a writ may not issue unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

**3.** Smalls' objection was preserved at trial, as defense counsel objected to the type of charge

the trial judge intended to deliver to the jury.

Supreme Court of the United States." By posing the question of whether the state's court treatment was "unreasonable," section 2254(d)(1) requires the federal court "to take into account the care with which the state court considered the subject." *Lindh v. Murphy,* 96 F.3d 856, 871 (7th Cir.1996), *rev'd on other grounds,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). With the United States Supreme Court as setting the bounds of what is "reasonable," a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment." *Id.* The Appellate Division's one-paragraph analysis of the *Allen* charge at issue demonstrates the lack of attention paid to the subject. *See Smalls,* 237 A.D.2d at 116, 654 N.Y.S.2d at 362. Because the charge was coercive and failed to include cautionary language counseling jurors not to surrender their conscientiously held beliefs, and the Appellate Division unreasonably found—given federal law as determined by the United States Supreme Court—the *Allen* charge to be proper, Smalls' habeas corpus petition will be granted. Furthermore, the error from the charge was not harmless.

## A. *The Allen Charge Was Coercive*

 Jury deliberations represent a "critical stage of a criminal trial." *United States v. Ruggiero,* 928 F.2d 1289, 1299 (2d Cir. 1991) (*quoting United States v. Ronder,* 639 F.2d 931, 934 (2d Cir.1981) (*citing Bollenbach v. United States,* 326 U.S. 607, 612–13, 66 S.Ct. 402, 90 L.Ed. 350 (1946))). A trial court, upon being informed that the jury is deadlocked, may give the jury an *"Allen"* charge urging the jury to continue its deliberations in order to arrive at a verdict. *See Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). A supplemental charge to deliberating jurors that urges them to continue to discuss the evidence and to listen "to each other's arguments," but also emphasizes that "the verdict must be the verdict of each individual juror, and not the mere acquiescence in the conclusion of his fellows" has been found proper by the United States Supreme Court. *Id.* at 501, 17 S.Ct. 154.

At the heart of *Allen* charge jurisprudence lies the basic principle that a defendant has "the right to have the jury speak without being coerced." *United States v. Burgos,* 55 F.3d 933, 936 (4th Cir.1995). "The propriety of an *Allen*-type charge depends on whether it tends to coerce undecided jurors into reaching a verdict by abandoning without reason conscientiously held doubts.". *United States v. Robinson,* 560 F.2d 507, 517 (2d Cir.1977) (en banc).

In *Lowenfield,* the Supreme Court reviewed a state prisoner's habeas petition challenging an *Allen* charge which advised the jurors to consider their fellow jurors' views, while at the same time stressed the duty of each juror to decide the case for himself or herself. The *Lowenfield* Court upheld the following instruction as uncoercive:

When you enter the jury room it is your duty to consult with one another to consider each other's views and to discuss the evidence with the objective of reaching a just verdict *if* you can do so without violence to that individual judgment.

Each of you must decide the case for yourself but only after discussion and impartial consideration of the case with your fellow jurors. *You are not advocates for one side or the other.* Do not hesitate to reexamine your own views and to change your opinion if you are convinced you are wrong *but do not surrender your honest belief* as to the weight and effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

*Lowenfield,* 484 U.S. at 235, 108 S.Ct. 546 (emphasis added).

 If, however, the state court's *Allen* charge is coercive such that it infringes on a defendant's due process rights to an impartial jury and a fundamentally fair trial, or the interrelated requirements of proof beyond a reasonable doubt and a jury verdict, a writ of habeas corpus should issue. Because habeas corpus review of a state court's *Allen* charge is limited to constitutional questions, relief will only be granted on the basis of such a supplemental charge where it is " 'established not merely that the instruction is

undesirable, erroneous, or even "universally condemned," but that it violated some right which was guaranteed by the Fourteenth Amendment.'" *Clark v. Irvin,* 844 F.Supp. 899, 906 (N.D.N.Y.1994) (*quoting Cupp,* 414 U.S. at 146, 94 S.Ct. 396); *see also Washington v. Walker,* No. 89 Civ. 7841, 1994 WL 391947 (S.D.N.Y. July 28, 1994). In determining whether the jury instruction was so coercive as to violate the federal constitution, "the instruction must be viewed as a whole." *Clark,* 844 F.Supp. at 906 (*citing Boyd v. United States,* 271 U.S. 104, 46 S.Ct. 442, 70 L.Ed. 857 (1926)). As stated by the *Lowenfield* Court, the charge must be considered "'in its context and under all the circumstances.'" *Lowenfield,* 484 U.S. at 237, 108 S.Ct. 546 (quoting *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965) (per curiam) (finding judge's statement to jury, "You have got to reach a decision in this case," coercive)).

 Here, the supplemental jury charge was coercive and deprived Smalls of his constitutional rights to due process and a fair trial. The trial court, after receiving a note informing it that the jury was deadlocked eleven to one, gave an unbalanced *Allen* charge over defense counsel's objection. In that charge, the trial court created a novel burden on the jurors: the duty to convince fellow jurors. It instructed the jurors as follows: "you should make every effort to convince the others," "it is your responsibility as a juror to convince the others as to the correctness of the position of views that you have," "it is your responsibility as a juror to attempt to convince the others of the correctness of your views," "it is your responsibility to convince the others, have them switch, have them adopt your views." This charge was coercive because it distorted the role of deliberating jurors, forcing them to become advocates instead of listeners. While a juror is duty-bound to consider the evidence individually and to listen to the arguments of fellow jurors, a juror has no responsibility to convince other jurors that his or her position is correct or should be adopted. Rather, a juror's duty is to impartially consider the evidence and try to reach an agreement without surrendering his

or her individual views. *See Allen,* 164 U.S. at 501–02, 17 S.Ct. 154.

Compare the instant charge to that in *Lowenfield,* 484 U.S. at 235, 108 S.Ct. 546, where the trial court, in an instruction approved by the Supreme Court, told jurors, "You are not advocates for one side or the other." If, as the trial court instructed in the case at bar, the duty of each juror is to convince the others jurors, rather than listening to their arguments in reaching his or her own verdict, then the inability to sway fellow jurors must invariably result in abandoning one's position, and succumbing to the majority.

Respondent, nevertheless, contends that because the state court judge spoke to all of the jurors without singling out either the majority or minority, the charge was proper. Yet, the trial court, when it delivered its *Allen* charge, knew that the jury was deadlocked eleven to one. "An evaluation of a suspect *Allen* charge must be conducted, in part, from the perspective of a juror in the minority, because '[t]hey always know their minority status, and if fearfully inclined, may presumably suspect a disgruntled judge can find them out.'" *Burgos,* 55 F.3d at 940 (citation omitted). The instructions here put pressure on the one juror to convince the other eleven, while at the same time encouraged the other jurors to voice their disagreement with that one juror's position. Here, as in *Burgos,* "the charge was not sufficiently balanced to ensure that the minority on the jury would not be 'coerced into going along with the majority. A decision so arrived is not the unanimous verdict of each juror, but simply the decision of a majority of the twelve.'" *Id.* (citation omitted). By sheer numbers, it was more likely that eleven people in a room would convince one than that one would convince eleven.

According to the trial court's instruction, the lone juror was either to accede to the arguments of the majority or had the "responsibility" of convincing the majority of his or her position. As in *United States v. Beattie,* 613 F.2d 762, 764 (9th Cir.1980), the *Allen* charge was coercive because it urged "minority jury members to alter their individually held views not on the basis of evi-

dence and the law, but on the basis of majority opinion."

The coerciveness of the instant charge arises not only from its mandate that it is each juror's "responsibility" to "convince," but also from its failure to include cautionary language admonishing jurors not to relinquish their conscientiously held belief. Contrary to Respondent's assertion that the judge made no mention of a need for the jurors to reach a verdict in the case, the jurors were not apprised of the following possibility: that the lone juror might remain unconvinced by the majority, and thus was entitled to rest on his or her conscientiously held views. The necessity of such a cautionary instruction was enhanced in light of the eleven to one division of the jury. Smalls has a right to the uncoerced verdict of *all* jurors. *See Lowenfield,* 484 U.S. at 241, 108 S.Ct. 546. Indeed, the Second Circuit has sanctioned the *Allen* charge with the provision that the jury should arrive at a verdict "if accomplished 'without any juror yielding a conscientious conviction which he or she may have.'" *United States v. Burke,* 700 F.2d 70, 80 (2d Cir.1983) (*quoting United States v. Rao,* 394 F.2d 354, 355 (2d Cir.1968)). "A trial court's failure to give such a cautionary instruction weighs heavily in favor of the conclusion that the defendant's right to a fair trial and impartial jury has been violated." *Jiminez v. Myers,* 40 F.3d 976, 981 n. 5 (9th Cir.1993); *see United States v. Strothers,* 77 F.3d 1389, 1391 (D.C.Cir.1996) (reversing for trial court's failure to give "the required admonition against surrendering one's honest conviction").

According to Respondent, Smalls' coercion claim is undermined by the trial court's announcement to the jurors that they were going to be sequestered for the night and by the length of jury deliberations subsequent to the *Allen* charge. The trial court judge directed the jurors to stop deliberating some time after he gave the *Allen* charge at issue because it was getting late. He stated that by keeping the jurors so late, "we are in effect forcing a verdict, [and][w]e do not wish to do that." (Trial tr. at 262.) This cannot be said to plant into the jurors' minds, soon after the *Allen* charge was given, that they

as jurors were free to stand firm on their own beliefs even if the other jurors disagreed. In the charge at issue, the trial judge repeated three times that it was each juror's responsibility to convince the others of the correctness of his or her views. The last words he spoke before asking them to return to the jury room were: "[I]t is your responsibility to convince the others, have them switch, have them adopt your views, but discuss it." (Trial tr. at 260.) Furthermore, asking the jurors to "discuss it" fails to temper the unbalanced instruction.

■ In addition, the length of deliberations after the charge was given does not prove that the charge was proper. While the court in *United States v. Giacalone,* 588 F.2d 1158, 1168 (6th Cir.1978), held that the length of deliberations after an *Allen* charge is irrelevant in determining whether the charge was coercive, the length of deliberations has been considered "as a significant factor in detecting coercion." *Beattie,* 613 F.2d at 765. However, "[w]hile the time elapsed between the charge and verdict is significant, it is not dispositive of the issue." *Id.* Thus, though a "jury verdict reached immediately after an *Allen* charge can be an indication of coercion," *United States v. Bonam,* 772 F.2d 1449, 1451 (9th Cir.1985), a longer period of deliberation will not make an otherwise coercive *Allen* charge uncoercive. For instance, in *Burke,* 700 F.2d at 80, the Second Circuit first concluded that the supplemental charge was proper because it instructed jurors "in an evenhanded, noncoercive manner that it would prefer a unanimous verdict if accomplished 'without any juror yielding a conscientious conviction which he or she may have.'" Having found the charge itself to be proper, the court added that "the length between the court's instruction and the actual rendering of the jury verdict is probative of the fact that the jury was not coerced ...." Here, in contrast, having established the coerciveness of the *Allen* charge, the distortion of the deliberative process was not lessened by the fact that the jury deliberated for some hours after the charge was delivered.

Respondent cites to *Lowenfield* for support, stating that the Supreme Court found

no coercion when the jury returned with its verdict only thirty minutes after the trial court delivered its *Allen* charge. As set forth above, the charge in *Lowenfield* was balanced, as it urged the jurors to reach a verdict, but only *"if* [they could] do so without violence to individual judgment." *Lowenfield,* 484 U.S. at 235, 108 S.Ct. 546 (emphasis added). It also reminded the jurors that they "are not advocates for one side or the other." *Id.* Thus, because the charge itself, taken as a whole, contained no hint of coercion, the length of deliberations was irrelevant. Respondent further cites to *Robinson,* where the Second Circuit stated that the fact that the jury deliberated at least several hours after the second *Allen* charge was strong indication that the effect of the charge was minimal. *Robinson,* 560 F.2d at 517–18. Again, Respondent neglected to note that the charge in *Robinson* failed "to mention any 'need' to reach a verdict, while [it] studiously emphasiz[ed] the 'duty' to adhere to 'individual judgment' and. 'individual conscience.' ... [This] reduced any potential for coercion to the point where the charge might even have been construed as encouraging the dissenter not to abandon her views." *Id.* at 517.

Given the totality of the circumstances in the instant case—including the nature of the deadlock, the trial judge's awareness thereof, and the lack of cautionary instructions in the *Allen* charge—the length of deliberations, the trial judge's remarks upon informing the jurors that they would be sequestered, and the requested readbacks of testimony fail to tilt the balance in favor of holding that the *Allen* charge did not violate Smalls' right to due process under the Fourteenth Amendment.

### III. *The Error Was Not Harmless*

In *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the Supreme Court articulated the standard of review a federal court should apply to habeas corpus petitions from state prisoners in determining whether a constitutional error was "harmless." *Id.* at 630–31.

The Supreme Court identified two categories of constitutional error. "Structural errors," which are "structural defects in the constitution of the trial mechanism, defy analysis by 'harmless-error' standards." *Id.* at 629, 113 S.Ct. 1710. (*quoting Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). An example of such an error is the deprivation of the right to counsel; such a structural error "requires automatic reversal of the conviction because they infect the entire trial process." *Id.* at 629–30, 113 S.Ct. 1710.

The other category of error is "trial error," which " 'occurs during the presentation of the case to the jury,' and is amenable to harmless-error analysis because it 'may ... be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial].' " *Id.* at 629, 113 S.Ct. 1710 (*quoting · Fulminante,* 499 U.S. at 307–08, 111 S.Ct. 1246). In the case of "trial errors" before a federal habeas court, the *Brecht* Court held that the *Kotteakos* standard, rather than the *Chapman* harmless error standard,[4] is applicable. *Id.* at 637, 113 S.Ct. 1710. Under the *Kotteakos* standard, the test is whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 637, 113 S.Ct. 1710 (*quoting Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). In *O'Neal v. McAninch,* 513 U.S. 432, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995), the Supreme Court clarified that "[w]hen a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." *Id.* at 994.

It would appear that a coercive *Allen* charge is akin to improper reasonable doubt

4. In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court held "that before a federal constitutional error can he held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. 824. Previously, the Supreme Court had applied the *Chapman* standard to federal habeas cases. *See Yates v. Evatt,* 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991); *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972).

instructions, a partial judge, or deprivation of the right to counsel, and therefore a "structural error" to which harmless error analysis is inapplicable. As Smalls points out, the trial court's supplemental charge in effect urged the holdout juror to determine his or her verdict based on a coercive charge that pressured him or her to return a verdict consistent with that of the other jurors, rather than on proof beyond a reasonable doubt.

Even assuming that the coercive *Allen* charge is a "trial error"—because the charge is viewed "in its context and under all circumstances," *Jenkins,* 380 U.S. at 446, 85 S.Ct. 1059—warranting harmless error analysis under *Kotteakos,* the charge at issue mandates the issuance of a writ.

As discussed above, the deliberations period post-*Allen* charge does little to prove that the impact of the trial court's distortion of the deliberative process was somehow diminished. After announcing itself as deadlocked, the jury continued deliberating under a coercive *Allen* charge, and its verdict was a product of the trial court's unbalanced instructions. It is dangerous to presume that the length of deliberations indicated a lack of coercion. The time that elapsed after the delivery of the *Allen* charge may simply demonstrate the stamina of the holdout juror, not whether that juror was or was not coerced.

However, did the defective *Allen* charge have "substantial and injurious effect or influence" on the jury's conclusion? This unusual charge did create a duty for the deliberating jurors to convince one another of the correctness of their positions and improperly made the jurors advocates. Moreover, the trial court failed to balance this charge with an instruction to the jurors that they were not to surrender their conscientiously held views of the evidence. Yet, it is difficult to say whether it meets the *Kotteakos* test. As the Supreme Court explained in *O'Neal,*

> In such circumstances, a legal rule requiring issuance of the writ will, at least often, avoid a grievous wrong—holding a person "in custody in violation of the Constitution ... of the United States." 28 U.S.C. §§ 2241(c)(3), 2254(a). Such a rule thereby both protects individuals from unconstitutional convictions and helps to guarantee the integrity of the criminal process by assuring that trials are fundamentally fair. *See* [R. Traynor, *The Riddle of Harmless Error* 23 (1970)] ("In the long run there would be a closer guard against error at trial, if ... courts were alert to reverse, in case of doubt, for error that could have contaminated the judgment").

*O'Neal,* 513 U.S. at 442, 115 S.Ct. 992.[5] In light of the Supreme Court's reasoning in *O'Neal,* because grave doubt exists concerning whether the *Allen* charge indeed had "substantial and injurious effect or influence" in determining the jury's verdict, the error is not harmless.

### Conclusion

For the reasons set forth above, Smalls' writ of habeas corpus is granted.

It is so ordered.

---

5. In *Kotteakos,* the Supreme Court wrote:
 > If, when all is said and done, the [court's] conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand.... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.
 > 
 > *Kotteakos,* 328 U.S. at 764–65, 66 S.Ct. 1239.