**Orlando MONTALVO, Petitioner,**

v.

**Dominic MANTELLO, Superintendent, Respondent.**

**No. 00CIV4786WK.**

United States District Court, S.D. New York.

Dec. 3, 2002.

**556**

Orlando Montalvo, 91–A–8518, Clinton Correctional Facility, Dannemora, New York, Petitioner, pro se.

Nancy D. Killian, Assistant District Attorney, Bronx County District Attorney's Office, Bronx, New York, for Respondent.

## OPINION & ORDER

KNAPP, Senior District Judge.

*Pro se* petitioner Orlando Montalvo ("Montalvo") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction of November 1, 1991, in New York State Supreme Court, Bronx County. Montalvo was convicted of murder in the second degree and was sentenced to an indeterminate term of twenty-five years to life imprisonment.

In his petition filed on June 5, 2000, Montalvo raises two claims. First, Montalvo alleges prosecutorial misconduct because the prosecution withheld exculpatory material, including police reports of a dying declaration made by the victim, Christino Garcia ("Garcia"), a witness statement made by Yolanda Matos ("Matos"), the victim's wife, and a statement made by the victim's sister. Montalvo claims that these police reports identify Genaro Andujar ("Andujar") as the perpetrator. Second, Montalvo alleges that he was denied effective assistance of trial counsel because: (1) he was "coerced" into not testifying; and (2) trial counsel failed to locate and contact alibi witnesses, including Fevine Fabian ("Fabian"), Alberto Rivera ("Rivera"), and Matos.

On July 31, 2000, we referred this case to Magistrate Judge Ellis. On August 6, 2002, Judge Ellis submitted to us his Report and Recommendation, in which he recommended that Montalvo's petition be dismissed in its entirety because Montalvo failed to exhaust the claims presented in state court. Moreover, Judge Ellis held that had the court not dismissed Montalvo's petition on procedural grounds, the ineffective assistance of counsel claim would nonetheless fail on the merits. Neither party filed written objections to the Report and Recommendation.

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). Where no timely objection to a magistrate judge's report and recommendation has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *Nelson v. Smith* (S.D.N.Y.1985), 618 F.Supp. 1186, 1189; *see also Pizarro v. Bartlett* (S.D.N.Y.1991), 776 F.Supp. 815, 817. We have reviewed the Report and are convinced that there is no facial error. As such, we accept in whole Judge Ellis' Report and Recommendation and order that Montalvo's petition for writ of habeas corpus be DISMISSED in its entirety.

**SO ORDERED.**

## REPORT AND RECOMMENDATION

ELLIS, United States Magistrate Judge.

### I. INTRODUCTION

*Pro se* petitioner Orlando Montalvo ("Montalvo") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction on November 1, 1991, in New York State Supreme Court, Bronx County. Montalvo was convicted of murder in the second degree and was sen-

tenced to an indeterminate term of twenty-five years to life imprisonment.

In his petition filed on June 5, 2000, Montalvo raises two claims. First, Montalvo alleges prosecutorial misconduct because the prosecution withheld exculpatory material, including police reports of a dying declaration made by the victim, Christino Garcia ("Garcia"), a witness statement made by Yolanda Matos ("Matos"), the victim's wife, and a statement made by the victim's sister. Montalvo claims that these police reports identify Genaro Andujar ("Andujar") as the perpetrator. Second, Montalvo alleges that he was denied effective assistance of trial counsel because: (1) he was "coerced" into not testifying; and (2) trial counsel failed to locate and contact alibi witnesses, including Fevine Fabian ("Fabian"), Alberto Rivera ("Rivera"), and Matos.

Respondent argues that the petition should be dismissed based on the following grounds: (1) the claim of prosecutorial misconduct is unexhausted because the claim of withholding exculpatory material was not raised in the Appellate Division; and (2) the claim of ineffective assistance of counsel is unexhausted because the claim that trial counsel failed to interview alibi witnesses Fabian and Rivera was not raised in the Appellate Division. Respondent's Memorandum of Law ("Resp.Mem.") at 4, 14. Furthermore, respondent argues that "to the extent that the state court reached the merits of petitioner's claims, the state court's determination of the claims was fully consonant with Supreme Court precedent and, accordingly, the claims must be rejected." Respondent's Affidavit in Opposition to Petition for Habeas Corpus ("Resp.Aff.") at 7. For the reasons set forth below, I recommend that Montalvo's petition be **DISMISSED**.

## II.  BACKGROUND

### A.  Factual History

On May 22, 1989, at approximately 4:00 p.m., while Garcia and his wife, Matos, were walking in the vicinity of 1227 Grand Concourse in the Bronx, Garcia got into an argument with Andujar and was then assaulted by Andujar and two other men. Resp. Aff. at Ex. 13, pp. 5–6; Trial Transcript ("Tr.") at 295. During the altercation, Garcia was hit in the head with a bottle and knocked to the ground. *Id.* at 296. Later that evening, at about 9:00 p.m., Garcia was shot twice while walking with his wife near the site of the earlier assault. *Id.* at 150, 297–98. Garcia died in Lincoln Hospital as a result of the shooting. *Id.* at 151–52, 275.

According to eyewitness Wanda Arce ("Arce"), Montalvo's girlfriend at the time, Montalvo had asked her to get some crack for him. *Id.* at 169, 176. When Arce returned without the drugs, Montalvo became mad and began to argue with her. *Id.* at 176–77. She testified that he then pulled out a gun and began shooting. *Id.* at 177–79. Andujar and his wife testified that they were standing across the street and witnessed Montalvo fire six shots, two of which struck Garcia. *Id.* at 297–98, 348–51, 269. After the shooting, Arce testified that she and Montalvo fled the scene and spent the night on her rooftop. *Id.* at 179.

On May 24, 1989, Andujar heard rumors that he was wanted by the police for Garcia's murder. *Id.* at 298–99. He went to the 44th Precinct and informed Detective Machicote that Montalvo was the shooter. *Id.* at 97–99, 298–99, 314–20. The following day, Detectives Machicote and Nealon went to Arce's apartment in search of Montalvo. *Id.* at 63–64. While the detectives were there, Montalvo called Arce and verbally threatened her and the two detectives. *Id.* at 64, 69–70. During the call,

Montalvo indicated that the detectives should look outside. *Id.* at 70. The detectives observed a 24–inch steel beam on top of the police vehicle. *Id.* Detectives subsequently apprehended Montalvo on the roof of a nearby building and seized a gun which he had in his possession. *Id.* at 73–75. According to a ballistics expert, a bullet from Garcia's chest matched a bullet from Montalvo's gun. *Id.* at 394, 405.

## B. Procedural History

### 1. Trial Court

During the trial, defense counsel informed the court that he and Montalvo had thoroughly discussed whether he should testify and that Montalvo indicated that he did not wish to testify. *Id.* at 427. Montalvo confirmed to the judge that he was given the option of testifying and verified that he did not wish to testify. *Id.* at 427–28. Montalvo also verified that he no longer wished to pursue alibi witnesses. *Id.* at 426. When asked by the judge whether he was satisfied that he could go forward without offering alibi witnesses, Montalvo replied, "Yes, I am." *Id.* at 426–27.

Additionally, questions were raised regarding the availability of Garcia's wife, Matos, as a witness. According to the prosecution, Matos was out of the country and thus unavailable to testify. *Id.* at 413–14. Defense counsel also indicated that he was unable to locate Matos. *Id.* at 413. For the record, the judge acknowledged that "both sides have demonstrated an effort to find this witness, and I'm also satisfied that she's not under the control of either party[.]" *Id.* at 414.

On July 15, 1991, the jury found Montalvo guilty of murder in the second degree pursuant to New York Penal Law § 125.25(1). *Id.* at 579. Prior to sentencing, Montalvo retained new counsel. Sentence Transcript at 2. On November 1, 1991, Montalvo was sentenced to a term of twenty-five years to life imprisonment. *Id.* at 17.

### 2. First CPL § 440.10 Motion to Vacate Judgment

On December 8, 1992, with the assistance of his newly retained counsel, Montalvo filed his first New York Criminal Procedure Law ("CPL") § 440.10 motion to vacate his conviction, alleging: (1) ineffective assistance of trial counsel; and (2) discovery of two new witnesses, Anna Ortiz and Zoraida Rijo, whose testimony would have resulted in a more favorable verdict. Resp. Aff. at Ex. 1, p. 9. On July 22, 1993, the court denied the motion. *Id.* at Ex. 3, p. 6.

The trial court found that nothing in or outside the record supported a finding that trial counsel failed to provide "meaningful representation." *Id.* at 4 (*citing People v. Baldi*, 54 N.Y.2d 137, 444 N.Y.S.2d 893, 429 N.E.2d 400 (1981)). Regarding the discovery of new witnesses, the trial court found that Montalvo's claim was based on facts that were unsupported by sworn allegations as required by CPL § 440.30(4)(b). *Id.* at 2. Moreover, the trial court found that there was no indication that the new witnesses could not have been produced at trial through due diligence. *Id.* Finally, the trial court did not find that testimony from these new witnesses, as a matter of probability, would have led to a more favorable verdict. *Id.* at 2–3.

Montalvo filed an application with the Appellate Division, First Department, seeking leave to appeal the trial court's denial of his first CPL § 440.10 motion to vacate. On September 30, 1993, the Appellate Division, First Department, granted Montalvo's leave to appeal. *Id.* at Ex. 4.

### 3. Second CPL § 440.10 Motion to Vacate Judgment

On October 17, 1995, acting *pro se,* Montalvo filed a second CPL § 440.10 motion to vacate his conviction, alleging: (1) ineffective assistance of trial counsel; (2) prosecutorial misconduct causing a conviction by improper means; and (3) denial of a fair trial. *Id.* at Ex. 5, p. 1. On February 5, 1996, the court denied the motion because Montalvo had raised the same issues as in the prior CPL § 440.10 motion. *Id.* at Ex. 7. Further, the court noted that the issues raised were "subject to appellate review." *Id.* Montalvo filed an application with the Appellate Division, First Department, seeking leave to appeal· from the denial of his second CPL § 440.10 motion to vacate. On February 11, 1997, the Appellate Division, First Department, granted Montalvo's leave to appeal. *Id.* at Ex. 8.

### 4. Direct Appeal

Montalvo filed a consolidated appeal of both CPL § 440.10 motions and his conviction to the Appellate Division, First Department, asserting three claims. First, Montalvo claimed that he was denied his right to a fair trial because of ineffective assistance of trial counsel who: (1) failed to admit exculpatory statements into evidence; (2) submitted an omnibus motion filled with factual errors; (3) failed to investigate and discover alibi witnesses such as Anria Ortiz and Zoraida Rijo; (4) gave late alibi notice; (5) failed to consult with petitioner in excusing a sworn juror; (6) failed to have petitioner ·or alibi witnesses testify; and (7) failed to present an effective summation. *Id.* at Ex. 9, pp. 13–21. Second, Montalvo asserted that the trial court erred in: (1) refusing to charge manslaughter in the second degree as a lesser included offense of murder in the second degree; and (2) denying the two motions to vacate judgment pursuant to CPL § 440.10. *Id.* at 22–24. Third, Montalvo

claimed that his sentence was excessive. *Id.* at 26.

On February 18, 1999, the Appellate Division, First Department, unanimously affirmed Montalvo's conviction. *People v. Montalvo,* 685 N.Y.S.2d 664, 258 A.D.2d 353 (N.Y.App.Div.1999). The court held that Montalvo received meaningful representation throughout the proceedings and that trial counsel presented "the only viable defense in light of the overwhelming evidence of guilt." 685 N.Y.S.2d at 665, 258 A.D.2d at 353. The court also stated that counsel's alleged failings regarding his presentation of proof had plausible strategic explanations. *Id.* Additionally, the court held that the trial court's summary denials of the CPL § 440.10 motions were "appropriate exercises of discretion" because the motions were based on "conclusory and otherwise unsupported claims, and were repetitive." *Id.* The Appellate Division found that the trial court properly declined to submit the charge of manslaughter in the second degree because "there was no reasonable view of the evidence to support the conclusion that defendant acted recklessly as opposed to intending to kill or cause serious physical injury." *Id.* Finally, the court found that there had been no abuse of sentencing discretion. *Id.*

On June 22, 1999, the New York State Court of Appeals denied Montalvo's application for leave to appeal. *People v. Montalvo,* 716 N.E.2d 1105, 93 N.Y.2d 974, 695 N.Y.S.2d 60 (1999). The instant petition followed on June 5, 2000.

### III. ANALYSIS

#### A. Exhaustion

Before a federal court may entertain a state prisoner's petition for habeas corpus, the state prisoner must first exhaust all available state judicial remedies. · 28

U.S.C. § 2254(b)(1); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). In the interests of comity and federalism, state courts must first have a "fair opportunity to pass upon [a petitioner's] federal claim[s]." *Daye v. Attorney General of N.Y.,* 696 F.2d 186, 191 (2d Cir.1982) (*in banc* ), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). " '[I]t would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.' " *Picard,* 404 U.S. at 275, 92 S.Ct. 509 (citation omitted).

■■■ In addition, a petitioner "must have set forth in state court all of the essential factual allegations asserted in his federal petition[.]" *Daye,* 696 F.2d at 191. A petitioner may fairly present the substance of a federal constitutional claim to the state court without citing " 'book and verse on the federal constitution.' " *Picard,* 404 U.S. at 278, 92 S.Ct. 509 (citation omitted). However, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye,* 696 F.2d at 192.

■■■ The Supreme Court has held that petitioners are required to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Therefore, the claim must have been presented to "the highest state court from which a decision can be had[,]" in order to be considered exhausted. *Daye,* 696 F.2d at 190 n. 3;

*see also Smalls v. Batista,* 6 F.Supp.2d 211, 216 (S.D.N.Y.1998). Some claims that are not raised at trial and/or direct appeal may be exhausted through state post-conviction proceedings. *See, e.g., Salahuddin v. Strack,* 1998 WL 812648, at *5 (E.D.N.Y. Aug.12, 1998) (citation omitted). However, " 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.' " *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (*quoting Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)); *see also Taylor v. Mitchell,* 939 F.Supp. 249, 253 (S.D.N.Y. 1996) (*citing Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). Thus, instead of dismissing the claim for failure to exhaust, the federal habeas court considers the claim to be procedurally defaulted. A petitioner must then endeavor to justify the default.

■■■ To overcome a procedural default, a petitioner must be able to "demonstrate cause for the default and actual prejudice ... or demonstrate that failure to consider the [federal] claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546 (*citing Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)); *see also Harris,* 489 U.S. at 258, 109 S.Ct. 1038. The Supreme Court has defined "cause" as " 'some objective factor external to the defense [which] impeded counsel's efforts' to raise the claim in state court." [1] *McCleskey v. Zant,* 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (*citing Murray,* 477 U.S. at 488, 106 S.Ct. 2639).

---

**1.** Examples include: "(1) outside interference that makes compliance with state procedural rules impracticable; (2) 'a showing that the factual or legal basis for a claim was not reasonably available to counsel'; and (3) '[i]neffective assistance of counsel.' " *Washington*

*v. Superintendent, Otisville Correctional Facility,* 1997 WL 178616, at *6 (S.D.N.Y. Apr.11, 1997) (*quoting McCleskey,* 499 U.S. at 494, 111 S.Ct. 1454 (*citing Murray,* 477 U.S. at 488, 106 S.Ct. 2639)).

The "fundamental miscarriage of justice" exception "is only available where the petitioner can supplement his constitutional violation with 'a colorable showing of factual innocence'" in the form of newly adduced evidence. *Washington v. Superintendent, Otisville Correctional Facility,* 1997 WL 178616, at *7 (S.D.N.Y. Apr.11, 1997) (*quoting McCleskey,* 499 U.S. at 494, 111 S.Ct. 1454); *see also Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

## 1. Prosecutorial Misconduct

■ Montalvo alleges that the prosecution withheld exculpatory material, including police reports of a dying declaration made by the victim, a statement made by the victim's wife, and a statement made by the victim's sister. Petition for Writ of Habeas Corpus ("Pet.") at 5I. He claims that these police reports identify Andujar as the perpetrator. *Id.* Respondent maintains that Montalvo's claim of prosecutorial misconduct is unexhausted because Montalvo did not raise the claim of withholding exculpatory material to the highest state court. Resp. Mem. at 4–5.

The only time that Montalvo raised a claim of prosecutorial misconduct was in his second CPL § 440.10 motion. Montalvo did not raise this claim on direct appeal to the Appellate Division, and therefore, his claim of prosecutorial misconduct is unexhausted. Montalvo is precluded from returning to the state court to exhaust this claim because a petitioner is "entitled to one (and only one) appeal to the Appellate Division[.]" *Aparicio v. Artuz,* 269 F.3d 78, 91 (2d Cir.2001) (*citing* N.Y. CRIM. PROC. LAW § 450.10(1)). Thus, because Montalvo no longer has any state remedies available, this Court deems his unexhausted claim of prosecutorial misconduct exhausted. *See Gray v. Netherland,* 518 U.S. 152, 161–62, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *see also Aparicio,* 269 F.3d at 90. Under such circumstances,

the claim is considered procedurally defaulted. As Montalvo has not submitted any evidence demonstrating cause or prejudice, or that a fundamental miscarriage of justice would occur, the Court is precluded from reviewing his claim of prosecutorial misconduct.

## 2. Ineffective Assistance of Trial Counsel

■ Montalvo claims that he was denied effective assistance of trial counsel because: (1) he was "coerced" into not testifying; and (2) trial counsel failed to locate and contact alibi witnesses, who could allegedly exculpate him, including Fabian, Rivera, and Matos. Pet. at 5G–5H. Respondent maintains that the specific claim that trial counsel failed to interview witnesses Fabian and Rivera is unexhausted because Montalvo did not raise the claim in the Appellate Division. Resp. Mem. at 4–5.

■ In considering a claim of ineffective assistance of counsel, "all of [the] allegations must have been presented to the state courts, allowing them the 'opportunity to consider *all* the circumstances and cumulative effect of the claims as a whole.'" *Caballero v. Keane,* 42 F.3d 738, 740–41 (2d Cir.1994) (emphasis in original) (*citing Sanford v. Senkowski,* 791 F.Supp. 66, 68 (E.D.N.Y.1992)). Since Montalvo's claim of ineffective assistance of counsel "can turn on the cumulative effect of all of counsel's actions, all his allegations of ineffective assistance should be reviewed together." *Rodriguez v. Hoke,* 928 F.2d 534, 538 (2d Cir.1991) (*citing Strickland v. Washington,* 466 U.S. 668, 695–96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

Montalvo's first allegation of ineffective assistance of counsel, regarding his failure to testify, was raised at each level of the state court system. Resp. Aff. at Ex. 1, 9. Montalvo's second allegation of ineffective assistance of counsel, regarding counsel's

failure to locate and contact two witnesses, Fabian and Rivera, was never mentioned at any level of the state court system. Because the state courts were not given an opportunity to consider the second allegation, Montalvo's entire ineffective assistance of counsel claim is considered unexhausted. *See Davidson v. Keane,* 1997 WL 64205, at *1 (2d Cir. Feb.14, 1997) (affirming the district court's dismissal, without prejudice, of petitioner's ineffective assistance of counsel claim, in part, because he added new allegations of trial counsel's failure to call additional witnesses). Although Montalvo did not include Fabian and Rivera in his previous CPL § 440.10 motions, he may return to the state court and file a third CPL § 440.10 motion to include the new allegation of trial counsel's failure to locate and contact these additional witnesses.[2] *Id.*

However, New York state courts have discretion to deny a motion to vacate a judgment when a petitioner was in a position in a previous motion to raise a ground or issue underlying the present motion, but did not. CPL § 440.10(3)(c). Notwithstanding the state court's discretion to deny the motion, the Court finds that the state should have the first opportunity to review this unexhausted claim. *See, e.g., Walker v. Miller,* 959 F.Supp. 638, 644 n. 6 (S.D.N.Y.1997); *Cowan v. Artuz,* 1996 WL 631726, at *4 n. 1 (S.D.N.Y. Oct.24, 1996). Because Montalvo may have a remedy in the state court system to exhaust his ineffective assistance of counsel claim, the

Court finds Montalvo's claim of ineffective assistance of trial counsel is unexhausted.

**B. Disposition**

█ Generally, a petition for writ of habeas corpus with unexhausted claims is dismissed without prejudice to allow the petitioner to return to the state courts to exhaust all available state judicial remedies. However, the limitations period has expired, and therefore, it would be futile to dismiss without prejudice because Montalvo cannot return to federal court.

█ Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Title I, § 106(b), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996), a one-year statute of limitations applies to petitions for writs of habeas corpus by state prisoners. 28 U.S.C. § 2244(d). The limitations period begins to run from the latest of:

A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such state action;

C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

2. *See also Walker v. Miller,* 959 F.Supp. 638, 644 n. 6 (S.D.N.Y.1997) (holding that any uncertainty as to whether petitioner's ineffective assistance claim would be procedurally barred since he did not raise it in his initial CPL § 440.10 motion is "best resolved by allowing the state courts to decide the claim first"); *Cowan v. Artuz,* 1996 WL 631726, at *4 n. 1 (S.D.N.Y. Oct.24, 1996) (*citing United States ex rel. Bagley v. LaVallee,* 332 F.2d 890, 892 (2d Cir.1964)) (deferring judgment on

ineffective assistance claim where petitioner had filed two CPL § 440.10 motions, without including this claim, on the grounds that "it is within the trial court's discretion to consider another such motion" and "even if there [is] some doubt as to the availability of relief in the New York courts, we still ... give its courts the first chance to review the alleged error[ ] so long as they have not authoritatively shown that no further relief is available.")

D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1) (West Cumulative Annual Pocket Part 2001). The limitations period "does not begin to run until the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or—if the prisoner elects not to file a petition for certiorari— the time to seek direct review via certiorari has expired." *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir.2001). The time in which a habeas petition is pending in federal court does not toll the one-year limitations period. *Duncan v. Walker*, 533 U.S. 167, 181–82, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001).

Montalvo was convicted on November 1, 1991, and the Appellate Division, First Department, affirmed his conviction on February 18, 1999. Leave to appeal was denied on June 22, 1999. Thus, Montalvo's conviction became final on September 20, 1999, at the conclusion of ninety days during which he could have sought certiorari in the United States Supreme Court. *Williams*, 237 F.3d at 151. On June 5, 2000, Montalvo filed his habeas petition. Because the time in which Montalvo's habeas petition was pending in federal court did not toll the limitations period, a successive petition would not be timely. Accordingly, Montalvo's petition should be **DISMISSED** in its entirety.

■ Even if Montalvo's petition were not subject to dismissal on procedural grounds, his ineffective assistance of counsel claim would fail on the merits. Under *Strickland*, in order to establish an ineffective assistance of counsel claim, a petitioner must show two things: (1) "that counsel's performance was deficient[,]" in that the attorney "made errors so serious" that the representation fell below "an objective standard of reasonableness"; and (2) "that counsel's errors were so serious as to deprive the defendant of a fair trial[.]" *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052. Based on the grounds raised in his petition, Montalvo cannot meet the standard set forth in *Strickland*. First, the record reflects that it was Montalvo's choice not to testify on his own behalf. Tr. at 427–28. Second, there is no indication that trial counsel's failure to call alibi witnesses was so unreasonable that it deprived Montalvo of a fair trial.

### IV. CONCLUSION

For the reasons stated herein, I respectfully recommend that Montalvo's petition for writ of habeas corpus be **DISMISSED** in its entirety.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Whitman Knapp, 40 Centre Street, Room 1201, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir.1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed.R.Civ.P. 72, 6(a), 6(e).

August 6, 2002.